UNITED STATES (BASCOM LAUNDER CORPORATION et al., intervenors) v. BENDIX HOME APPLIANCES, Inc. et al.

United States District Court
S. D. New York.
Dec. 30, 1949.

Melville C. Williams, Special Assistant to the Attorney General, attorney for the U. S. and Irving B. Glickfeld, and Beatrice Rosenberg, Special Assistants to Attorney General.

Arnold G. Malkan, New York City, attorney for plaintiffs-intervenors.

Hawkins, Delafield & Wood, New York City, attorneys for defendant Telecoin Corp., and Clarence Fried, and Frank E. Curley, New York City, of counsel.

RIFKIND, District Judge.

This is an application for leave to intervene as parties plaintiff in an anti-trust action prosecuted by the United States against the defendants and terminated by consent decree entered on the 17th day of December, 1948.

The petitioners are a group of operators of self-service laundries. They employ in their laundries machines manufactured by defendant Bendix which they have purchased from defendant Telecoin. In connection with such purchases they signed agreements whereby, *inter alia*, in return for a royalty of $2 a month for each machine they were authorized to use the mark "Launderette".

These agreements apparently were cancelled or terminated sometime after the consent decree was filed. Thereafter, Telecoin instituted actions against the individual petitioners in various municipal courts of the City of New York for royalties which had accrued under the agreements. The petition seeks the following relief:

1. Allowing the petitioners to intervene as parties plaintiff.

2. Permanently restraining the defendant Telecoin from enforcing its agreements with the petitioners.

3. Adjudicating the defendant Telecoin in contempt of court by reason of the institution of the suits against the petitioners for the enforcement of such agreements.

4. Declaring such agreements violative of the anti-trust laws.

5. Amplifying and making more specific the consent decree herein if necessary.

6. And for such other and further and different relief as to the court may seem just and proper.

The petitioners do not assert a claim to intervention as of right under Rule 24(a), Federal Rules of Civil Procedure, 28 U.S. C.A. Nor is this an instance of the kind of intervention which has been most closely assimilated to intervention as of right and is illustrated by Missouri-Kansas Pipe Line Co. v. U. S., 1941, 312 U.S. 502, 665, 61 S.Ct. 666, 85 L.Ed. 975. In that case section IV of the decree explicitly preserved to a non-party, Panhandle Eastern, certain rights and section V provided that "Panhandle Eastern, upon proper application, may become a party hereto for the limited purpose of enforcing the rights conferred by Section IV hereof." Supra, 312 U.S. 507, 61 S.Ct. 668. Intervention was allowed as "a vindication of the decree". Supra, 312 U.S. 508, 61 S.Ct. 669. The decree in the instant case does not explicitly preserve any rights to the petitioners nor does it expressly provide that they may intervene to enforce any rights.

The question presented is, therefore, whether sound discretion exercised within the boundaries of Rule 24(b), F.R.Civ.P. warrants the intervention of the petitioners. U. S. v. Vehicular Parking, Ltd., D.C.1947, 7 F.R.D. 336, is cited and heavily relied on by the petitioners. The differences in fact between that case and the case at bar must be noted. The decree in the Vehicular case was entered after the defendant had been found guilty of violating the anti-trust laws, and provided for compulsory licensing at a reasonable royalty under patents owned by defendant. The intervenor alleged refusal by the defendant to issue him a license except at an unreasonable royalty. The decree did not contain the provisions subsequently incorporated in the decrees in U. S. v. Hartford-Empire Co., 1946, D.C. N.D.Ohio, 65 F.Supp. 271, 276 and in U. S. v. National Lead Co., D.C.S.D.N.Y., 1945, 63 F.Supp. 513, 534, which expressly authorized applicants for compulsory licenses to apply to the court for the determination of the reasonableness of the royalty. As I read the opinion of the court in the Vehicular case it seems to me in effect to say the following: that the decree inadequately expressed the intention of the decree-making court. That court was the only one which could give adequate relief to an applicant for a license. Absent the assistance of that court, the applicant for a license would have to risk the consequences of infringing without knowing in advance what royalty or damages he might be subjected to. In effect, therefore, that decree required amendment. The proper procedure should have, therefore, been for the Attorney General to apply for the amendment of the decree so as to incorporate therein a provision similar to that in the Hartford-Empire case. Since the United States through the Attorney General consented and approved the petition for intervention it amounted to a short-cut of that procedure.

In contradistinction, in the case at bar it is by no means apparent that the decree was intended to confer upon persons in the class of the petitioners the right of access to the court in this litigation and that the intention was inadequately expressed. Nor are the petitioners exposed to any future business risks which can be resolved only in this litigation. Moreover, here the United States as the party plaintiff and the Attorney General as the statutory vindicator of the Government's policy enunciated in the anti-trust laws, object to the intervention.

Analysis of the petition reveals that there is only one immediate end which the petitioners truly seek to attain—the restraint of the suits now pending in the municipal courts of the City of New York for the recovery of past due royalties. There is not the slightest suggestion that they are subjected to the effects of the unlawful conduct condemned by the decree other than by the prosecution of these suits.

If the petitioners desire to secure judicial condemnation of conduct not now prohibited by the decree but allegedly violative of the anti-trust laws, then they seek to raise new issues. This they may not do by intervention. See Leaver v. K. &

L. Box & Lumber Co., D.C.N.D.Cal.1925, 6 F.2d 666, 667; United States v. Radio Corporation of America, D.C.Del.1933, 3 F.Supp. 23, 25; United States v. 1,830.62 Acres of Land, D.C.W.D.Va.1943, 51 F. Supp. 158, 161. Their remedy is by private suit under 15 U.S.C.A. §§ 26, 15.

■ If the petitioners assert that the existing decree in fact does forbid the prosecution of the pending law suits for the royalty arrears, then they seek to intervene to enforce the consent decree entered into after the United States brought an action under section 4 of the Sherman Act, 15 U.S.C.A. § 4, and section 15 of the Clayton Act, 15 U.S.C.A. § 25.

It is settled that a private person may not maintain a suit under section 4 of the Sherman Act. State of Minnesota v. Northern Securities Co., 1904, 194 U.S. 48, 71, 24 S.Ct. 598, 48 L.Ed. 870; Paine Lumber Co. v. Neal, 1917, 244 U.S. 459, 471, 37 S.Ct. 718, 61 L.Ed. 1256.

The Supreme Court, in construing the Sherman Act, has commented: "It seems evident that the Act envisaged two classes of actions,—those made available only to the Government, which are first provided in detail, and, in addition, a right of action for treble damages granted to redress private injury." United States v. Cooper Corp., 1941, 312 U.S. 600, 608, 61 S.Ct. 742, 745, 85 L.Ed. 1071.

Authorization for suits for injunctions by private individuals resulted only after enactment of the Clayton Act, 15 U.S.C.A. § 26. That Act provided in separate sections for suits for injunctions by the United States, 15 U.S.C.A. § 25, and by private parties. 15 U.S.C.A. § 26.

■ It would seem to be a necessary corollary of this dichotomy of rights which underlies the structure of the anti-trust laws that private persons may not intervene in suits which are maintainable only by the United States. And this corollary should apply whether the particular action is for enforcement of the anti-trust laws, or for the enforcement of decrees rendered under those laws.

It is clear, however, that under certain circumstances intervention in a Government suit under the anti-trust laws is permissible. Certainly this is so where the decree fashioned with the aid of the Government provides for intervention. Missouri-Kansas Pipe Line Co. v. U. S., 1941, 312 U.S. 502, 665, 61 S.Ct. 666, 85 L.Ed. 975. And if, as in the Vehicular case, supra, the Government invites intervention as a means of amending an inadequate decree, the procedure is sound. In both situations the policy behind the bifurcated structure of the anti-trust laws is not disserved since it is essentially the initiative of the Government which guides the suits.

It may well be that even under other circumstances the legislative division between private and public suits can be maintained despite intervention by a private individual in a Government suit. Perhaps the Government, having commenced action to enforce a decree, might welcome private intervention as an aid to Government implementation of the anti-trust laws. It may be that this should be regarded merely as another means of Government enforcement, and not inconsistent with the bifurcated structure of the laws. Perhaps it was considerations such as these which Mr. Justice Roberts had in mind when in a dictum he suggested, in a case involving enforcement of an anti-trust decree, that a private party "had standing to invoke the discretion of the district judge to permit it to intervene * * *." Allen Calculators v. National Cash Register Co., 1944, 322 U.S. 137, 141, 64 S.Ct. 905, 907, 88 L.Ed. 1188.

■ But certainly where, as in the case at bar, the United States has taken no action under the decree against the defendant; where, indeed, the United States has sifted the proposed intervenors' complaints and has decided to oppose the intervention, it would violate the statutory policy to allow the petition. Intervention would tend to make the private parties quasi attorneys general in enforcing the anti-trust laws, in contravention of 15 U.S.C.A. § 4 and 15 U.S.C.A. § 25 which explicitly require that

Government suits shall be under the direction of the Attorney General.

In this case the Attorney General has by brief indicated to the court that he has conducted an extensive investigation to determine whether the defendant should be charged with violation of the decree. It is reasonably to be expected that collation of all the relevant evidence of defendant's conduct will be conducive to a more intelligent determination of the issue of contempt, and if that issue is resolved against the defendant, the remedy to be applied can then be more intelligently fashioned than by piecemeal intervention of a multitude of individual "victims". As I understand it, the scheme of the statute is sharply to distinguish between Government suits, either criminal or civil, and private suits for injunctive relief or for treble damages. Different policy considerations govern each of these. They may proceed simultaneously or in disregard of each other. The very fact that the Congress has made an adjudication in a Government suit prima facie evidence of certain facts in a private suit would indicate that it was not the intention of the Congress that private parties should be permitted to apply for private relief at the foot of a decree entered in a Government suit. 15 U.S.C.A. § 16. That section, however, denies such effect to a consent decree. Intervention, if allowed here, would tend to defeat the policy behind the distinction drawn by section 16 between litigated decrees and consent decrees.

If the petitioners argue that in fact the existing decree does forbid the prosecution of the pending law suits for the royalty arrears, they can accomplish their purpose of frustrating these suits by pleading the decree as a complete defense or by seeking injunctive relief in a private suit under 15 U.S.C.A. § 26. I do not see why the adjudication of that defense should confront the municipal courts of New York with any greater difficulty than that presented by any other written instrument.

I conclude that it would be improvident to grant intervention in the instant case. The application is therefore denied.