317 F.2d 90
 UNITED STATES of America, Plaintiff,
v.
AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS,
Defendant-Appellee.
Application of SHENANDOAH VALLEY BROADCASTING, INC., et al.,
Petitioners-Appellants, for the Determination of
Reasonable License Fees.
 No. 317, Docket 28086.
 United States Court of Appeals Second Circuit.
 Argued April 10, 1963.
Decided May 7, 1963.
 
 Walter R. Mansfield, New. york City, (Donovan, Leisure, Newton & Irvine, New York City, Ralstone R. Irvine and Helmut F. Furth, New York City, of counsel), for petitioners-appellants.
 Arthur H. Dean, New York City, (William Piel, Jr., Herman Finkelstein, New York City, Lloyd N. Cutler, (Wilmer, Cutler & Pickering), Washington, D.C., and Frederick A. Terry, Jr., New York City (Sullivan & Cromwell), New York City, of counsel), for respondent-appellee.
 Joel E. Hoffman, Washington, D.C., (Lee Loevinger, Asst. Atty. Gen., Robert B. Hummel, Atty.), for the United States.
 Before MOORE, FRIENDLY and HAYS, Circuit Judges.
 FRIENDLY, Circuit Judge.
 
 
 1
 On March 14, 1950, the District Court for the Southern District of New York entered an amended consent decree in an action brought by the United States against the American Society of Composers, Authors and Publishers (ASCAP) under the Sherman Act.[1] The decree provided, inter alia, that ASCAP must 'grant to any user making written application therefor a non-exclusive license to perform all of the compositions in the ASCAP repertory,' and that 'ASCAP shall, upon receipt of a written application for a license for the right of public performance of any, some or all of the compositions in the ASCAP repertory, advise the applicant in writing of the fee which it deems reasonable for the license requested.' If the parties were unable to agree upon a reasonable fee, the applicant might move the District Court to fix one. ASCAP was bound to notify the Attorney General of any such motion, and had the burden 'to establish the reasonableness of the fee requested by it.'
 
 
 2
 Pursuant to these provisions, television stations have had a choice between two types of licenses to use ASCAP music on all their local (i.e., non-network) programs-- a 'blanket' license, under which they pay a fee based on the revenues from the entire group of programs covered by the license, and a 'perprogram' license, under which the fee is based only on revenues from those programs which actually use ASCAP music. In the fall of 1961 Shenandoah Valley Broadcasting, Inc., and the owners and operators of 363 other television stations applied to ASCAP for a new type of license that would cover only programs produced by them and would exclude not only network programs (which had always been excluded) but also prerecorded program material furnished by independent film producers-- who would thus be obliged to make their own arrangements with ASCAP. ASCAP took the position that it was not obliged to grant this new form of license. After proceedings in the District Court, all conducted under the title of the original anti-trust suit, Chief Judge Ryan concluded that the amended consent decree did not give the applicants a right to the type of license requested, that the relief sought by them could be had only by an amendment of the decree 'after hearings on a petition for such relief by a party to the suit,' and that they were not parties to the suit.
 
 
 3
 On October 10, 1962, judgment dismissing the application was entered; on December 7, 1962, applicants filed notices of appeal both to the Supreme Court, apparently pursuant to 2 of the Expediting Act, 32 Stat. 823 (1903), as amended, 15 U.S.C. 29, 49 U.S.C. 45, and to this Court. ASCAP promptly moved the Supreme Court to dismiss or affirm; the motion did not assert that the appeal should properly have been taken here.[2] On January 14, 1963, the Supreme Court entered a per curiam memorandum, 371 U.S. 540, 83 S.Ct. 519, 9 L.Ed.2d 508, reading:
 
 
 4
 'The motion to dismiss is granted and the appeal is dismissed for want of jurisdiction.
 
 
 5
 'MR. JUSTICE BLACK is of the opinion that probable jurisdiction should be noted.' Two months later ASCAP moved to dismiss the appeal to this Court for went of appellate jurisdiction; we directed that the motion be argued along with the merits. The United States, taking no position on the merits, supported the motion to dismiss. We think the motion must be granted.
 
 
 6
 Section 2 of the Expediting Act provides that 'In every civil action brought in any district court of the United States' under the Sherman Act 'or any other Acts having a like purpose * * *, wherein the United States is complainant, an appeal from the final judgment of the district court will lie only to the Supreme Court.' 49 U.S.C. 45. The judgment here sought to be appealed from was entered in a 'civil action brought in (a) district court of the United States' under the Sherman Act, 'wherein the United States is complainant.' There would be no profit to appellants in an argument that the judgment dismissing their motion to fix license fees was not a 'final judgment of the district court.' For our own jurisdiction under 28 U.S.C. 1291 is limited to 'appeals from all final decisions of the district courts of the United States'; the Supreme Court has indicated, as we should have assumed in any event, that the standard of finality under the two statutes is the same, Brown Shoe Co. v. United States, 370 U.S. 294, 306-309, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962), so that if the judgment is not sufficiently 'final' to warrant an appeal to the Supreme Court, it equally does not qualify under 28 U.S.C. 1291; and the appeal is within none of the exceptions to the rule of finality provided in 28 U.S.C. 1292. Moreover, the Expediting Act has been authoritatively construed not only to route appeals from all final judgments directly to the Supreme Court[3] but to forbid interlocutory appeals. In United States v. California Co-op. Canneries, Inc., 279 U.S. 553, 558, 49 S.Ct. 423, 425, 73 L.Ed. 838 (1929), after summarizing the 'previous opportunities for delay' incident to appeal first to the Court of Appeals and then to the Supreme Court-- the mischief at which the Expediting Act was aimed, Mr. Justice Brandeis said:
 
 
 7
 'Thus, Congress limited the right of review to an appeal from the decree which disposed of all matters * * * and it precluded the possibility of an appeal to either court from an interlocutory decree.'
 
 
 8
 Later, United States Alkali Export Ass'n v. United States, 325 U.S. 196, 201-202, 65 S.Ct. 1120, 89 L.Ed. 1554 (1945), and De Beers Consolidated Mines, Ltd. v. United States, 325 U.S. 212, 217, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945), held that interlocutory orders of the district court in suits subject to the Expediting Act can be reached by extraordinary writs under 28 U.S.C. 1651 issued by the Supreme Court, where 'sole appellate jurisdiction lies,' 325 U.S. at 202, 65 S.Ct. 1120, 89 L.Ed. 1554-- even when, as in the De Beers case, the order was a preliminary injunction ordinarily reviewable by a court of appeals under 28 U.S.C. 1292(a)(1). See also Hart & Wechsler, The Federal Courts and the Federal System (1953), at 1372.
 
 
 9
 Neither are appellants assisted by the two court of appeals decisions on which they rely. Our own decision in United States v. St. Regis Paper Co., 285 F.2d 607, 609-611 (2 Cir., 1960), aff'd, 368 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961), is inapposite. That was a suit by the United States under 9 of the Federal Trade Commission Act, 15 U.S.C. 49, for a mandatory injunction commanding a corporation to furnish reports to the Commission under 6(b) of the Act, and for assessment of the the penalties provided in 10 for failure to do that. We held that although the Federal Trade Commission Act was an act 'having a like purpose' to the Sherman Act, it would be unreasonable to read the Expediting Act 'to require a clear path from the district court to the Supreme Court of the United States' in an action that was merely a part of the investigatory states preliminary to a Commission proceeding, any final order in which would be directly reviewable only in a court of appeals. The other case is Magee-Hale Park-O-Meter Co. v. Vehicular Parking, Limited, 180 F.2d 897, 900 (3 Cir., 1950). There a Government anti-trust suit against Vehicular Parking had resulted in a district court decree, comparable to the one here, requiring the defendant to license its patents for reasonable royalties; subsequently, Magee-Hale had intervened in that suit and moved for summary judgment declaring the patents invalid. Meanwhile, Magee-Hale brought a separate action against Vehicular Parking seeking a judgment declaring the same patents invalid, and the Court of Appeals affirmed the dismissal of this action on the ground that the issue could be determined in the pending anti-trust suit. In the course of its opinion, the court of appeals said that if the district court, having denied or dismissed the motion for summary judgment, proceeded to fix reasonable royalties to be paid by Magee-Hale under the compulsory-licensing provision of the decree, 'An appeal from such an order, if taken by Magee-Hale, will search the record and give to this court jurisdiction to test the validity of the order denying or dismissing Magee-Hale's motion for a summary judgment declaring the patents invalid.' It is wholly unrealistic to take this remark as a considered determination that, despite the plainly contrary implications of Terminal R.R. Ass'n v. United States, 266 U.S. 17, 28, 45 S.Ct. 5, 69 L.Ed. 150 (1924), such an appeal would lie to the court of appeals rather than to the Supreme Court. Prompted by a question from the benech, counsel for ASCAP have furnished us with copies of the briefs in Magee-Hale; they reveal no discussion of that issue, which, indeed, was hardly relevant. As our own experience has shown, United States v. New York, N.H. & H.R.R., 276 F.2d 525, 537 (2 Cir.), cert. denied, 362 U.S. 961, 80 S.Ct. 877, 4 L.Ed.2d 876 (1960), it is all too easy for a court of appeals, which exercises general appellate authority over final decisions of district courts, to forget, unless reminded by counsel, that a few such appeals are not its business. When an issue as to its role in appeals under the Expediting Act has been squarely presented, the Third Circuit has made its position plain. Missouri-Kansas Pipe Line Co. v. United States, 108 F.2d 614 (3 Cir., 1939), cert. denied, 309 U.S. 687, 60 S.Ct. 887, 84 L.Ed. 1030 (1940). Appellants' reliance on the statement in Magee-Hale is thus answered a fortiori by what Chief Justice Marshall said long ago: 'No question was made, in that case, as to the jurisdiction. It passed sub silentio, and the court does not consider itself as bound by that case.' United States v. More, 3 Cranch. (7 U.S.) 159, 172, 2 L.Ed. 397 (1805).
 
 
 10
 Appellants' main contention is that since, as they assert, their appeal is in fact from a 'final judgment,' the Supreme Court's dismissal 'for want of jurisdiction' must be taken to mean that it was not within the Expediting Act, thereby permitting an appeal to this Court. They contend that there is no other rational explanation of the Supreme Court's action. Appellee and the United States find such an explanation in an analogy to the rule that appeals from orders denying merely permissive intervention will not be entertained. City of New York v. Consolidated Gas Co., 253 U.S. 219, 40 S.Ct. 511, 64 L.Ed. 870 (1920); Allen Calculators, Inc. v. National Cash Register Co., 322 U.S. 137, 64 S.Ct. 905, 88 L.Ed. 1188 (1951); Sam Fox Publishing Co., Inc., v. United States, 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961). Appellants reply that since the consent decree expressly gave them, as music users, the right to invoke the district court's jurisdiction by applying for a license, they come within F.R.Civ.Proc. 71, providing that 'When an order is made in favor of a person who is not a party to the action, he may enforce obedience to the order by the same process as if he were a party;' hence, they say, insofar as the intervention cases are relevant, the controlling principle is the one sustaining appealability where a court has denied intervention to a party entitled to intervene as of right. Missouri-Kansas Pipe Line Co. v. United States, 312 U.S. 502, 61 S.Ct. 666, 85 L.Ed. 975 (1941); see Sutphen Estates, Inc. v. United States, 342 U.S. 19, 20, 72 S.Ct. 14, 96 L.Ed. 19 (1951).
 
 
 11
 Continuing the dialogue, appellee and the United States counter that the case is indeed like permissive intervention in the important respect 'that a person whose private interests coincide with the public interest in government antitrust litigation is nonethless not bound by the eventuality of such litigation, and hence may not, as of right, intervene in it.' Sam Fox Publishing Co. v. United States, supra, 366 U.S. at 689, 81 S.Ct. at 1313, 6 L.Ed.2d 604. In such cases it has been said that even though the denial of intervention effectively ends any opportunity for the would-be intervenor to assert his claim in the pending suit, it is not sufficiently 'final' to be appealable because it leaves him free to seek the same relief in an independent action. Cresta Blanca Wine Co. v. Eastern Wine Corp., 143 F.2d 1012, 1015 (2 Cir., 1944); Cameron v. President and Fellows, 157 F.2d 993, 997 (1 Cir., 1946).[4] Accordingly, the Supreme Court could well have regarded the judgment here as not final and thus as analogous to the permissive intervention cases, in the basis that if the consent decree did not entitle appellants to the type of license requested, they were non-parties seeking a modification of the decree, whereas even if it did so entitle them, they are still free to assert their rights in an independent private anti-trust suit against ASCAP. To this appellants respond that since they claimend relief under the decree as a matter of right, denial of their claim would have led to affirmance of the district court's judgment rather than to dismissal for want of jurisdiction. As a matter of strict logic, the argument has a certain attractiveness. See Cameron v. President and Fellows, supra, 157 F.2d at 997. But it ignores that in this area the issue of appealability has tended to fuse with the merits of the claim to be heard. See Sam Fox Publishing Co., supra, 366 U.S. at 687, 81 S.Ct. at 1311-1312, 6 L.Ed.2d 604. Thus, even when a person appealing from the denial of his motion to intervene claims he was entitled to intervention not merely permissively but as of right, the Supreme Court, upon determining he was not entitled to intervene as of right, customarily will dismiss the appeal. Allen Calculators, Inc. v. National Cash Register Co., supra; Sutphen Estates, Inc. v. United States, supra; Sam Fox Publishing Co. v. United States, supra. Compare Farmland Irrigation Co. v. Dopplmaier, 220 F.2d 247 (9 Cir., 1955). We cannot escape the conclusion that this, in effect, is what happened here. But even if we though otherwise, and even if we were to share the view of one Justice that the Supreme Court had been hasty in dismissing the appeal-- which we in no way intimate-- we should still see no way for appellants to escape the controlling force of the Expediting Act in routing all appeals from final judgments to the Supreme Court and in forbidding appeals from any others.
 
 
 12
 Appeal dismissed.
 
 
 
 [1]
 The suit was brought in 1941 and the original consent decree was entered that year. The nature and history of the litigation are sketched in Sam Fox Publishing Co. v. United States, 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961)
 
 
 [2]
 Appellee did argue to the Supreme Court that 'If this appeal can be taken under the Expediting Act, ASCAP and any and all of its more than 30,000 licensees can appeal directly to this Court from any determination of a license fee or a form of license made by the District Court under the Amended Final Judgment,' and that 'The Expediting Act does not contemplate that the energies of this Court be expended on matters of such great technical complexity and of such limited public interest.' But this is hardly an argument for review in a court of appeals
 
 
 [3]
 The 'final judgment(s)' appealable to the Supreme Court under the Expediting Act are not limited to the principal judgment awarding or denying relief; they include certain orders prior to such a judgment, e.g., orders denying applications for intervention as of right, Missouri-Kansas pipe Line Co. v. United States, 312 U.S. 502, 61 S.Ct. 666, 85 L.Ed. 975 (1941), and certain orders subsequent to such a judgment. See Aluminum Co. of America v. United States, 302 U.S. 230, 58 S.Ct. 178, 82 L.Ed. 219 (1937); and particularly Terminal R.R. Ass'n v. United States, 266 U.S. 17, 45 S.Ct. 5, 69 L.Ed. 150 (1924), involving an application by certain parties 'to enforce rights claimed by them under the original decree.'
 
 
 [4]
 This rationale does not seem wholly consistent with other statements that orders denying what was sought merely as permissive intervention may be appealable if an abuse of discretion. See 4 Moore, Federal Practice (1962) 102, and cases cited in fn. 2