Phillip I. WARHEIT et al., Plaintiffs,

v.

Werner OSTEN et al., Defendants.

Civ. A. No. 37445.

United States District Court,
E. D. Michigan, S. D.

Jan. 9, 1973.

As Amended March 1, 1973.

Barris, Sott, Denn & Driker, Detroit, Mich., for plaintiffs.

David M. Miro, Detroit, Mich., Irwin Alterman, Southfield, Mich., Richard Gushee, Robert Russell, Lawrence G. Campbell, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

On November 23, 1971, an action was filed in the United States District Court, Eastern District of Michigan, Southern Division, by Phillip Warheit against Werner Osten alleging violations of Section 17(a) of the Securities Act of 1933, 15 U.S.C.A. § 77q(a); Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j(b); and the General Rules and Regulations promulgated thereunder, particularly Rule 10(b)–5 of the General Rules and Regulations under the Securities Exchange Act of 1934. Subsequently, more parties joined the lawsuit as plaintiffs, and more defendants were named, including

various corporate officers and agents of the Great Markwestern Packing Company.

Prior thereto, on October 1, 1971, Wallace Handler had been appointed as the Receiver for Great Markwestern Packing Company by the Bankruptcy Court of the United States District Court for the Eastern District of Michigan under Chapter 11 proceedings. He has since been appointed Trustee in a straight bankruptcy proceeding.

The existence of the lawsuit was called to the attention of Mr. Handler, hereinafter called "Receiver", in July of 1972. The Receiver, learning of the alleged actions of the defendants, concluded that it would be in the best interests of the bankrupt estate, the creditors of the corporation and the parties who purchased debenture bonds from the corporation to intervene and to seek damages from the defendants. He filed a motion for intervention in this action under F.R.C.P. 24, claiming a right to intervene under Rule 24(a)(2) and asking the court to permit intervention under Rule 24(b)(2).

Rule 24 provides a procedure by which a person, claiming "an interest relating to the property or transaction" involved in the suit can become a party to an action when his absence might "as a practical matter impair or impede his ability to protect that interest" [(a)(2)], or when the intervenor's "claim or defense and the main action have a question of law or fact in common" and the intervention will not "unduly delay or prejudice the adjudication of the rights of the original parties", [(b)(2)].

■ The rule cannot possibly catalogue every possible circumstance in which intervention should be permitted, and it is well understood that the rule should be read to allow intervention in as many situations as possible. Missouri-Kansas Pipeline Co. v. United States, 312 U.S. 502, 61 S.Ct. 666, 85 L. Ed. 975 (1941). Nonetheless, intervention is never automatic, and certain minimal criteria must always be met by the would-be intervenor.

■ The Receiver has not convinced the court that he may intervene under F.R.C.P. 24(a)(2). There is nothing in the record to describe or explain the Receiver's protectable interest in this transaction other than the bare assertion that such a protectable interest exists. Further, the record does not establish that ultimate disposition of the action will impair or impede the Receiver's ability to protect himself. It is not sufficient to assert, as the Receiver so does, that the original action, if successful, will reduce the "collectability" of the defendants. This facet of the rule would be without meaning if that construction were adopted, for almost any lawsuit, if successful, will reduce the assets of the defendants. Lastly, the record does not indicate any possible findings or holdings which would be binding on, and adversely affect, the Receiver.

Courts have been fair and liberal in their application of Rule 24(a)(2). See, for example, Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967); Nuesse v. Camp, 128 U.S.App. D.C. 172, 385 F.2d 694 (D.C.Cir.1967); and Atlantis Development Corp. v. United States, 379 F.2d 818 (5th Cir.1967). These cases indicate how widely the courts are willing to stretch F.R.C.P. 24(a)(2), but no court has been willing to stretch the rule to the point of abolishing it. This court is no exception. The essentials to intervention as of right in this case are not present and intervention under Rule 24(a)(2) will not be allowed.

F.R.C.P. 24(b)(2) permits a court to exercise its discretion and allow intervention in a wider range of cases, but the intervenor must meet the standards required for federal jurisdiction, i.e. permissive intervention must have independent jurisdictional grounds. Babcock & Wilcox Co. v. Parsons Corp., 430 F.2d 531 (8th Cir.1970); Isbrandtsen Co. v.

S. S. Kokoh Maru, 263 F.Supp. 784 (S. D.N.Y.1966).

There is no basis for the exercise of diversity jurisdiction, as many of the persons on both sides of the case, including the corporation and the Receiver, are residents of Michigan. It must therefore be determined whether the Receiver has stated a federal cause of action against the defendants. The original claim was based on a violation of the federal securities laws.

In an effort to state federal jurisdiction, the Receiver in Bankruptcy has alleged violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10(b)–5 of the General Rules and Regulations promulgated by the Securities and Exchange Commission. The would-be intervenor has cited cases wherein the Receiver or Trustee in Bankruptcy has been able to bring a cause of action in the federal courts based on Rule 10(b)–5, naming corporate officers as the defendants. The Receiver suggests the cited cases were based on corporate mismanagement, however, a close scrutiny of the cases indicates that in fact the cause of action was not based on mismanagement, although that may have existed, but rather the cause of action was based upon the fraudulent purchase or sale of stock by the corporation. See Pettit v. American Stock Exchange, 217 F.Supp. 21 (S. D.N.Y.1963) and Bailes v. Colonial Press, Inc., 444 F.2d 1241 (5th Cir. 1971).

The *Pettit* case involved 578,000 shares of Swan-Finch stock which was issued in purported exchange for valuable consideration. As the opinion notes, 217 F.Supp. p. 24, "In fact, the consideration was neither valuable nor equivalent, nor was it ever intended that it should be received by Swan-Finch."

The entire heart of the transaction which precipitated the *Pettit* lawsuit was the fraudulent transactions in securities which resulted in the corporation being defrauded of 578,000 shares of its stock (p. 25). This gave rise to a corpo-

rate cause of action, the corporation being a defrauded seller, and the trustee was able to maintain the lawsuit using Rule 10(b)–5 as the basis for federal jurisdiction.

*Bailes* is another case involving the sale of stock. There the bankrupt corporation, American Southern, was caused by the defendants ". . . to issue to Colonial Press a total of 412,000 shares for a transfer to it (American Southern) of the assets and liabilities of Colonial Press represented to have a net worth of $412,000.00, when in truth and in fact the said Colonial Press was then insolvent and had an excess of liabilities over assets so transferred of $11,942.75." (444 F.2d p. 1243) And at page 1245: "It is settled in this Circuit that, by the issuance of stock to Colonial Press, American Southern became a "seller" of securities for purposes of the Securities Act . . . and that, therefore, it has standing to seek redress for violations of these laws." (Citations omitted.)

Both the *Pettit* and *Bailes* cases involve situations where the corporation itself was defrauded in the sale of its stock and therefore qualified as a seller under the 1934 Act. They are readily distinguished from the present case, because Great Markwestern Packing Company, the bankrupt, was neither a seller or buyer of stock. In this case the corporation received full value for securities it issued and no claim is made to the contrary. As was recently noted in Simmons v. Wolfson, 428 F.2d 455, 456 (6th Cir.1970), "It has long been settled that only purchasers or sellers of securities may invoke the provisions of Section 10(b) of the 1934 Act or Rule 10(b)–5 . . ." See also Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2nd Cir.1952).

The *Pettit* and *Bailes* cases may well have involved some, if not a great deal, of corporate mismanagement. But the Trustee in those cases could also allege the fraudulent purchase or sale of securities which involved the bankrupt corporation. It was not the corporate mis-

management, but rather the transactions by the corporation in securities as a buyer or seller which gave rise to federal jurisdiction.

■ A trustee in bankruptcy acts only to collect and reduce to money the assets of the estate for which he is trustee. This is done for the benefit of the creditors. He does not have standing to sue on behalf of the stockholders or others to enforce their claims. Caplin v. Marine Midland Grace Trust Company, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1971); Clarke v. Chase National Bank, 137 F.2d 797 (2nd Cir.1943); Mooney v. Vitolo, 67 Fed.Sec.L.Rep. § 96,116 (S.D.N.Y.1967). He cannot therefore claim jurisdiction through any claim of the shareholders or others who may have been involved in the buying or selling of the securities, and since the corporation received value for the stock it sold he lacks a jurisdictional basis for his claim of intervention.

The Receiver alleges no other grounds which would state a federal question in his claim against the defendants.

Intervention by the Receiver would not be appropriate. His motion to intervene is denied.

So ordered.