No. 80-293

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

THE STATE OF MONTANA ex rel
JOANN PALMER,

Plaintiff in Intervention and
Relator,

vs.

THE DISTRICT COURT OF THE
NINTH JUDICIAL DISTRICT et al.,

Defendant and Respondent.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Plaintiff:

R. V. Bottomly, Great Falls, Montana

For Respondent:

Poore, Roth, Robischon and Robinson, Butte, Montana
Nelson and Werner, Cut Bank, Montana

---

Submitted: September 4, 1980

Decided: DEC - 4 1980

Filed: DEC - 4 1980

_Thomas J. Kearney_
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Relator JoAnn Palmer applied to this Court on September 4, 1980, for a writ of supervisory control, seeking review of the District Court's denial of her motion for intervention. We find that this issue is properly before this Court by writ, but we deny all relief to relator.

Relator and her sister Margaret Simonson are the primary heirs of their deceased mother, Emma Sauter. Prior to Emma's death, Emma's conservator, Dwaine Iverson, initiated proceedings against Margaret Simonson and her husband, on behalf of Emma Sauter. He alleged oppression, fraud, and malice in their leasing of farmland from Emma. The Simonsons retained the law firm of Werner & Nelson to defend the action, but Emma died testate prior to further proceedings in the lawsuit.

Emma's will named Wilbur Werner of the Werner & Nelson law firm as personal representative of her estate. Shortly thereafter, Barney Reagan was substituted as counsel for defendants Simonsons in the previously-filed lawsuit. JoAnn Palmer then petitioned the court for the appointment of Dwaine Iverson as personal representative of the estate, or in the alternative for his appointment as a special administrator for the purpose of handling the lawsuit against the Simonsons. Palmer alleged that Werner should be disqualified from acting as personal representative because of his conflict of interest in previously representing the defendants. In November 1979, the trial court denied the petition, finding that petitioner did not adequately show that Werner was biased and further that Palmer had an adequate remedy against Werner if he failed to prosecute the claim.

Palmer appealed that ruling to this Court. In an opinion dated August 13, 1980, In the Matter of the Estate of Sauter (1980), ____Mont.____, 615 P.2d 875, 37 St.Rep. 1425, we determined that Werner should remain as personal representative, but that a special administrator should be appointed by the District Court solely for handling the claim against the Simonsons. The

district judge appointed Dwaine Iverson, Palmer's personal choice.

In February, 1980, while the appeal was pending, Palmer filed a motion to intervene in the law suit, alleging that Werner was not effectively pursuing the claim against the Simonsons, and that in order to protect her interest as beneficiary, she should become a party. The district judge denied her motion on June 20, 1980. Palmer filed a notice of appeal from that ruling on July 17, 1980. Prior to the hearing of the appeal, but subsequent to this Court's ruling of August 13 on the matter of the personal representative, Palmer petitioned this Court for a writ of supervisory control to review the denial of the motion to intervene.

Rule 1, M.R.App.Civ.P, sets out those judgments or orders from which an appeal can be taken. A denial of a motion to intervene is not one of those orders. Thus, the June 20, 1980, ruling by the trial court is not appealable, but we find that it is properly before us on a writ. If we were not to review this decision immediately, and the pending lawsuit went to completion without the joinder of a proper intervenor, the intervenor would be left at the end of the suit without a proper remedy at law. However, we find that JoAnn Palmer is not a proper intervenor in the suit because her interest is adequately represented by the special administrator, Dwaine Iverson.

Relator petitioned to intervene pursuant to Rule 24(a)(2), M.R.Civ.P.:

> "Intervention of right. Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

She argued that the personal representative (then Werner) could not adequately represent her interests in the lawsuit because of his conflict in having had an attorney-client

relationship with defendants. She alleged that she was the only person interested in the outcome of this lawsuit, making her the sole person interested in prosecuting it to completion. We find this position to be untenable.

At the outset, we note that throughout this litigation, JoAnn Palmer has argued that Werner as personal representative was an improper person to handle the lawsuit, and that it should be handled instead by Iverson, who filed the suit initially as conservator. Yet at this point in the litigation, she argues that she should intervene because the now-appointed special administrator Iverson cannot adequately represent her interests. It would appear that relator is hardly in a position to argue now against Iverson's ability to represent her.

Additionally, the prosecution of claims for the benefit of the estate is a task delegated to the personal representative of an estate, section 72-3-613(22), MCA, 33 C.J.S., Executors & Administrators §100, and an heir does not have the right to pursue the action himself unless the personal representative fails to act on the claim. Holland v. Kelly (1917), 177 Cal. 507, 171 P. 421. There is certainly no evidence before this Court that Iverson has failed in his duty to prosecute.

At this point, the lawsuit is being brought to protect the interest of the heirs, and Rule 17(a), M.R.Civ.P, demands that all actions be prosecuted in the name of the real party in interest. But it further provides that "[an] administrator . . . may sue in his own name without joining with him the party for whose benefit the action is brought." This Court has previously discussed the purpose of this rule, noting that any other rule would promote a multitude of suits by heirs, resulting in hopeless confusion with respect to the prosecution of an action. State ex rel. Carroll v. District Court (1961), 139 Mont. 367, 371-72, 364 P.2d 739, 741.

This same problem was addressed in the recent Colorado case of In the Matter of the Estate of Scott (1978) 40 Colo.App.

343, 577 P.2d 311. There, heirs of the decedent attempted to intervene, in order to appeal from an adverse ruling on a claim defended by the administrator. In denying intervention, the Colorado Court said:

> "We noted . . . that there are substantial problems with basing the right to intervene upon various questions as to how or in what manner a law suit should be prosecuted. When the law created a mechanism whereby one person as a representative of a group could conduct litigation, the purpose was the efficient, speedy, and orderly determination of rights which were held in common. For the courts to grant intervention to any member of a represented class who disagrees with the decisions of the representative, solely on that basis, would in our view defeat the entire purpose of representative litigation. A personal representative, under such a rule, would always be in danger of losing the ability to represent and act for the estate and might well find himself relegated to a position of looking on as the affairs of the estate became hopelessly entangled. It seems hardly likely that the General Assembly when it clothed the personal representative with far reaching affirmative powers, could have intended for his position to be so fragile." Estate of Scott, supra, 577 P.2d at 313.

That court went on to say that in determining adequacy of representation under Rule 24(a), the court will look to see if "there is a party charged by law with representing [the absent party's] interest. [If so,] then a compelling showing would be required to show why this representation is not adequate." Estate of Scott, supra.

There is no question about the duty of Iverson (special administrator) to represent the interests of JoAnn Palmer. By statute, he is deemed a fiduciary, and is charged with acting in the best interests of the successors to the estate. Sections 72-3-610, 72-3-701-704, MCA. If he does not so act, he is liable to interested persons for damages. Section 72-3-616, MCA. See also Estate of Graf (1968), 150 Mont. 577, 580, 437 P.2d 371, 373.

Based on the foregoing, we find that JoAnn Palmer's interests are being adequately represented by parties to the lawsuit. Therefore, we determine that the trial judge correctly denied her petition to intervene.

- 5 -

*Frank I. Haswell*
_____
Chief Justice

We concur:

_____
_____
_____
_____
Justices

Mr. Justice John C. Sheehy dissenting:

The majority has reached the illogical result of saying to JoAnn Palmer: "This is your fight, but we won't let you fight it."

The true protagonists in cause no. 9346, now entitled "Dwaine J. Iverson, as special administrator of the Estate of Emma Sauter, deceased, versus Margaret and Wayne Simonson" are JoAnn Palmer on the one hand and the Simonsons on the other. While Dwaine J. Iverson is the nominal plaintiff suing the Simonsons on behalf of the estate, the only beneficiary if he wins, and the only loser if he loses, is JoAnn Palmer. The suit exists because JoAnn Palmer, one of Emma Sauter's heirs, argues that Margaret Simonson, the only other of Emma Sauter's heirs, and Wayne Simonson, took advantage of Emma Sauter during her lifetime to their advantage and the disadvantage of JoAnn Palmer. Dwaine J. Iverson, as special administrator, is thus suing one heir for the benefit of the other. Margaret Simonson, one of the heirs, can personally defend herself to the fullest extent. JoAnn Palmer, says this Court, may not personally prosecute her action to her fullest extent, but must rely on the efforts of the special administrator, even though JoAnn is now the vested one-half owner of the subject matter of the suit. Simply to state the situation is to demonstrate the error of the majority, for it is precluding the one person vitally interested in the success of the suit from personally litigating the issues.

While granting that JoAnn Palmer's petition to intervene was denied while Wilbur Werner was the sole personal representative of the Sauter estate, and also granting that Dwaine J. Iverson was JoAnn Palmer's choice both as conservator and as

-7-

special administrator, I would nevertheless hold her right to intervene is mandated by the intent and spirit of Rule 24(a)(2), M.R.Civ.P. The applicable rule reads:

> "(a) <u>Intervention</u> <u>of</u> <u>Right</u>. Upon timely application anyone shall be permitted to intervene in an action:
>
> ". . .
>
> "(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

The foregoing rule is identical to its federal counterpart after the federal amendment of 1966. Rule 24(a)(2), Fed.R.Civ.P. In a case prior to the 1966 amendment, the United States Supreme Court held that federal Rule 24(a) was not a complete inventory of interventions allowable of right. Missouri-Kansas Pipe Line Co. v. U.S. (1941), 312 U.S. 502, 61 S.Ct. 666, 85 L.Ed. 975. The U.S. Supreme Court hewed to the same line after the 1966 amendment in Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co. (1967), 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814. In the latter case, instead of a rigid rule, the Supreme Court found "elasticity" in its provisions.

It is beyond cavil that JoAnn Palmer's ability to protect her interest in cause no. 9346 will be impaired or impeded by the disposition eventually to be made in that cause. The decision will be final as to her. The only remaining consideration is how this Court should treat the language of 24(a)(2), M.R.Civ.P., "unless the applicant's interest is adequately represented by existing parties."

The federal Rule 24(a)(2) pre-1966 granted the right to intervene if the applicant's interest "is or may be inadequate."

After 1966, the federal Rule, and now our Rule, omit the phrase "or may be." Professor Moore states:

"In making the language conversion from an affirmative requirement that the representation 'is or may be inadequate' to the exception clause 'unless the . . . interest is adequately represented,' the words 'may be' have been dropped. The resulting meaning should, nevertheless, remain the same. That is, if the applicant shows that the representation 'may be inadequate' then this showing should preclude the court from finding that 'the interest is adequately represented.' See Note, 1968 Duke L.J. 117, 129." 3B Moore's Federal Practice 24-316, §24.09-1[4].

The decision of the Colorado Appellate Court in Matter of Estate of Scott (1978), 40 Colo.App. 343, 577 P.2d 311, cited by the majority, requires a closer examination in the light of an earlier case. In Scott, the intestate mother was survived by three children, and several grandchildren who were all the descendant of a deceased daughter of the intestate mother. One of the sons filed a claim for $100,000 against the mother's estate, for work he allegedly performed in her cattle-ranching operation prior to her death. His brother, as administrator, disallowed the claim and suit was brought by the claimant. At the conclusion of the hearing, the court allowed the claim to the extent of $60,000. The administrator did not appeal the decision. The grandchildren sought to intervene for the purpose of making an appeal. It appears that none of the children of the decedent were interested in appeal. The Colorado court decided not to allow the intervention on the basis that the "identity of interest" approach showed that the administrator as defendant, had an identical interest with all the other heirs in the suit brought by one of them, stood to suffer the same gain or loss from the result of the suit as all the other heirs, including the grandchildren, and therefore, the estate was adequately represented, which meant that the grandchildren were adequately represented.

-9-

In an earlier case, Howlett v. Greenberg (1974), 34 Colo.App. 356, 530 P.2d 1285, the Colorado court allowed an heir to intervene in a wrongful death case where a mother, granted an exclusive right by statute to sue, refused to appeal an adverse decision. The Colorado court in Scott used the decision in Howlett as authority for its decision in the Scott case. Apparently then, the Colorado court did not move away from its position stated in Howlett, as follows:

> "Colorado follows the rule that an applicant for intervention of right under C.R.C.P. 24(a)(2) must show both, that the representation of his interest by existing parties is or might be inadequate and that the applicant is or might be bound by the judgment in action." (Emphasis in original.)

Therefore, whatever else may be derived from the Scott decision, it appears that Colorado is in agreement with the United States Supreme Court and the better authorities that Rule 24(a)(2) is not a complete inventory of interventions as of right; and further, that in considering whether the intervenor-applicant is adequately represented in the pending suit, his petition will be granted if his representation "is or may be" inadequate.

Moreover, in Scott, the Colorado Court of Appeals had before it an heir who was suing the estate, not another heir.

There cannot be an identity of interest between JoAnn Palmer and the special administrator. The special administrator represents the estate of Emma Sauter, and in effect, he is representing the only heirs, JoAnn Palmer and Margaret Simonson. If he has a fiduciary responsibility to protect JoAnn Palmer, as the majority implies, he likewise has a fiduciary responsibility not to injure Margaret Simonson. He has a conflicting duty and because of that, it cannot be said that JoAnn Palmer is adequately represented by him.

In Atlantis Development Corporation v. United States
(5th Cir. 1967), 379 F.2d 818, it was held that the amended
federal Rule 24(a)(2), should be given retroactive application
to the maximum extent possible, so as to incorporate the
pre-1966 interpretation, and the Court further noted that
federal Rule 24(a)(2) ties into the related situations of
joinder of parties and class actions, particularly in Rule
19, Fed.R.Civ.P.

Rule 19, M.R.Civ.P., is identical to Rule 19, Fed.R.Civ.P.
Those rules contain language which is identical to Rule
24(a)(2), in that the Court under Rule 19 will make a finding
as to whether "as a practical matter [refusal of joinder will]
impair or impede his ability to protect that interest."
In an earlier case, State ex rel. Drum v. District Ct. of
Thirteenth J. D. (1976), 169 Mont. 494, 548 P.2d 1377, this
Court refused to dismiss an action where an out-of-state
defendant could not be joined, though the out-of-state
defendant was a usurer that had done business in this state.
The holding in the Drum case was contra to the spirit of
Rule 19, as expressed in Atlantis, that the real parties in
interest should litigate the issues. To the extent that the
majority is rigidly applying Rule 24 in JoAnn Palmer's case,
it is at least consistent with its holding in Drum.

It is useful to repeat what the United States Supreme
Court and other authorities hold in connection with Rule
24(a)(2), that it is not a complete inventory of interventions
allowable of right. Justice is better served when the true
adversaries are allowed to wage the war. I recall the story
of the woman who showed her young son Michaelangelo's statue
of David. When she explained to the boy that the artist had
carved the magnificent figure out of a great block of stone,
the incredulous boy asked how the artist knew that David was

-11-

in there.    The time is in the future when this Court will cut through its granitic view of the Montana Rules, and release the soul imprisoned therein.

I would grant the writ to permit the intervention of JoAnn Palmer.

John C. Sheehy
                         Justice