**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Lee SHUBERT et al., Defendants.**

**Civ. A. No. 56-72.**

United States District Court
S. D. New York,
Civil Division.

July 24, 1969.

Robert A. Hammond, III, Acting Asst. Atty. Gen., Antitrust Division, Harry N. Burgess, Elliott H. Moyer, Dept. of Justice, Washington, D. C., for the United States.

Gerald Schoenfeld & Bernard B. Jacobs, and Vaughan & Lyons, New York City, for defendants Morgan Guaranty Trust Co. of New York, Muriel K. Shubert and Kerttu Helena Shubert, as Executors under Last Will and Testament of Jacob J. Shubert, and Select Theatres Corporation; Gerald Schoenfeld, New York City, of counsel.

Roth, Carlson, Kwit, Spengler & Mallin, New York City, for Nederlander Theatrical Corporation; Robert S. Carlson, New York City, of counsel.

## MEMORANDUM DECISION

LASKER, District Judge.

Select Theatres Corporation, a defendant herein ("Select"), moves for an order permitting it to acquire a beneficial interest in and to operate the theatre being constructed at the Century City complex in Los Angeles, California. The motion is made pursuant to the final judgment filed in this action on·

February 17, 1956, which provides in relevant part in Section XXVII:

"Jurisdiction is retained by this Court for the purpose of enabling any of the parties of this Final Judgment to apply to this Court at any time for such further orders or directions as may be necessary or appropriate for the construction or carrying out of this Final Judgment, for the amendment or modification of any of the provisions, for the enforcement of compliance therewith, and for the punishment of violations thereof."

and in Section XXV:

"Defendants are enjoined from acquiring a beneficial interest in any theatre, provided that

\*   \*   \*   \*   \*   \*

"(B) \* \* \* defendants may acquire a beneficial interest in any theatre

"(1) \* \* \* upon an affirmative showing to this Court that such acquisition will not unduly restrain competition \* \* \*."

By the terms of the 1956 decree, defendants were enjoined from a variety of practices and required to divest themselves of their interests in a large number of theatres in New York, Boston, Chicago, Detroit and Philadelphia. In addition, the Shuberts since the date of the decree have disposed of their interests in theatres in Baltimore and Toledo and theatres in Boston and Chicago other than those which they were ordered to sell.

The decree provides that representatives of the Department of Justice may have access to the records and papers of the defendants for the purpose of securing compliance, and the Department of Justice has in fact kept itself continually advised on this subject. It is undisputed that the defendants have been and are presently in compliance with the decree as it has been amended from time to time.

In December of 1968, the defendant Select advised the Justice Department of its desire to acquire an interest in the theatre being constructed at the Century City complex in Los Angeles.[1] The Department considered the proposal and found no objection from its point of view. On May 13, 1969, in anticipation of the argument on the motion herein, the Assistant Attorney General of the Antitrust Division addressed letters to persons who were operating legitimate theatres or were "connected with the production of legitimate attractions," and who therefore, in the opinion of the Assistant Attorney General, would have an interest in the outcome of Select's motion. The letter requested the addressees to indicate their "views on the question whether the acquisition of this theatre by Select would unduly restrain competition." It also advised such interested persons: "In addition regardless of what the Government's position will eventually be, if you should desire to make your position known to the Court as an *amicus curiae* and the Court sees fit to permit you to do so, we will have no objection to your doing this." The letter concluded by specifying the scheduled date of the hearing on the motion and requested an early reply so that the Government would have such information available in advance of that date.

A number of persons responded to the Assistant Attorney General's letter favoring defendant's application. (Exhibits F–1 through F–10 to Affidavit of Lawrence S. Lawrence, Jr., sworn to July 7, 1969). The only objector, and the only person to appear at the argument on the motion, was Nederlander Theatrical Corporation ("Nederlander"). At that argument a representative of the Antitrust Division ap-

---

1. The interest to be acquired is a leasehold of the theatre pursuant to an agreement of lease with ABC Theatres of California, Inc., a subsidiary of American Broadcasting Companies, Inc., for a term of twenty-nine years and eleven months, commencing upon the completion of construction of the theatre.

peared and orally stated to the Court that the Government found the defendants in compliance with the decree, that except for the objection of Nederlander no interested persons had indicated any opposition, and that the Government would not oppose the granting of the motion. Nederlander appeared by counsel and applied for leave to appear as *amicus curiae* and to submit evidence to the Court in opposition to the motion. No such evidence in affidavit or other form was offered by Nederlander at the argument. The Court allowed Nederlander two days in which to submit an affidavit intended to constitute an offer of proof, and reserved decision.

Pursuant to the Court's permission, Nederlander submitted on June 26, 1969, an affidavit of James N. Nederlander, President of Nederlander Theatrical Corporation, sworn to that day.

The Nederlander affidavit argues that the acquisition by the defendant Select of an interest in the Century City theatre in Los Angeles would "unduly restrain competition" within the meaning of the decree and of the relevant statute. Nederlander contended that the relevant market by which restraints of competition in the theatre industry were to be measured consisted of Chicago, Los Angeles and New York; that the defendants already had a dominant position in New York and Chicago and that the acquisition of an interest in what will be the largest legitimate theatre in Los Angeles, when added to their ownership in Chicago and New York, would indeed restrain competition.[2] Further, Nederlander contends that the characteristics and operating policies of the theatres presently being operated in Los Angeles are such that

2. Serious doubt is cast on the validity of Nederlander's argument as to threatened tie-in violations by the findings of Judge Kraft in Goldlawr, Inc. v. Jacob J. Shubert, et al., 268 F.Supp. 965 (U.S. D.C., E.D.Pa.). *Goldlawr* was a private antitrust suit in which the plaintiff contended that the Shubert defendants compelled producers to present their attractions in Shubert theatres in the City of Philadelphia and attempted to prevent them from presenting such attractions in non-Shubert theatres. Judge Kraft found *inter alia* as follows:

"206. Between September 1, 1950 and October 17, 1960, 30 attractions were presented in the Erlanger Theatre in Philadelphia. Of these, 19 were also presented in in a theatre in New York City, 10 (or 52.63%) of which were presented in a Shubert theatre in New York. This is virtually identical with the percentage of other attractions which played other non-Shubert out-of-town theatres and which played Shubert-New York (52.10%). There was no exclusion, between September 1, 1950 and October 17, 1960, from Shubert-New York theatres of attractions which played non-Shubert theatres elsewhere.

"207. Between September 1, 1950 and October 17, 1960, 180 attractions were presented in all non-

Shubert operated theatres in Philadelphia and Washington (excluding the Erlanger). Of these, 119 were also presented in a theatre in New York City, 62 (or 52.10%) of which were presented in a Shubert theatre in New York.

"209. Operators of non-Shubert New York theatres, in the period between September 1, 1950 and October 17, 1960, had 'just as many' bookings per theatre as did Shubert New York theatres and had 'no trouble getting attractions' for presentation at their theatres. Many so-called 'hit' shows were presented in non-Shubert New York theatres. Shows presented in non-Shubert New York theatres were often those which had tried out in Shubert theatres out-of-town. Operators of out-of-town non-Shubert theatres were not prevented from obtaining bookings for road shows because the show had had a run in a Shubert New York theatre."

The dates specified in the findings set out above define the damage period in the case before Judge Kraft. His decision was made in 1968, however, and contains no indication that the findings would be inappropriate at that time, nor does anything in the record before the Court on this motion.

if the motion were granted Select or Shubert would acquire "100% total dominance in Los Angeles of theatres able to handle large musical and dramatic attractions on an open-end booking."

The Court requested the Antitrust Division to submit to the Court its views as to the Nederlander position as set forth in Mr. Nederlander's affidavit and to advise the Court, in the light of the affidavit, what its position was as to the merits of the instant motion. The Court also afforded Select an opportunity to file a supplemental affidavit in answer to that of Nederlander.

The Government has submitted a memorandum concluding, on the basis of the present record, not to oppose the granting to Select of its request to acquire an interest in the Century City theatre. Select has submitted in opposition to Nederlander's affidavit the impressive affidavit of Lawrence S. Lawrence, Jr., sworn to July 7, 1969.

\* \* \*

### I.

On the basis of the documentary record described above, that is, the original affidavit of Lawrence S. Lawrence, Jr., the affidavit of Nederlander and its supporting documents, the memorandum of the Government, and the supplemental affidavit of Lawrence S. Lawrence, Jr. and its supporting documents, the Court concludes that there is no need for a hearing on the motion nor any serious doubt that the defendants have made the affirmative showing required by the decree that the acquisition by Select of the proposed interest in the Century City theatre will "not unduly restrain competition" either within the meaning of the decree or of the governing statute. While the statistics presented in the Nederlander affidavit indicate the natural narrowness of competition within the theatre industry, they do not establish that competition will be lessened by Select's acquisition of the Century

City theatre in Los Angeles. Indeed, as the Government states in its memorandum:

"Although theatre availability at any particular time may not be decisive, we note that Nederlander does not claim that there has recently been a shortage of either Shubert or non-Shubert New York theatres nor that theatre unavailability has been a problem for producers seeking New York presentation.

"\* \* \* Currently, non-Shubert theatres in Toronto, Washington and Detroit apparently have replaced Shubert theatres in Philadelphia and Boston as the more significant try-out theatres, and there has been significant non-Shubert theatre construction outside New York. The constructed and projected publicly sponsored and non-profit theatres do and will provide competition in varying degrees for the commercial theatres, and are, and probably will continue to be, a source of product for the commercial theatre.

"Nederlander asserts that because of the characteristics of three non-Shubert and non-Nederlander theatres in Chicago, Shubert and Nederlander would each have two of the significantly available competing legitimate theatres in Chicago. We would not regard such a Chicago situation as currently requiring Shubert to forego an initial entry into Los Angeles. However, although we recognize that theatres cannot be considered completely fungible, we believe that even after the most extensive testimony, the three additional Chicago theatres would be regarded as being of some significance as competitive or potentially competitive with the Shubert and Nederlander theatres in Chicago.

"The main thrust of the Nederlander proffer is that the characteristics and operating policies of the presently operating Los Angeles theatres are such that the Century acquisition would confer on Shubert '100% total

dominance in Los Angeles of theatres able to handle large musical and dramatic attractions on an open-end booking.' If the Nederlander assumptions are correct, this use of the Century could occur no matter who acquired the Century theatre. However, again recognizing that theatres are not completely fungible and that theatre characteristics (including size) are pertinent to weighing market power, it would not appear that all the other Los Angeles theatres could be eliminated as operations competing for patronage with the Century. Undoubtedly further testimony could establish that some or possibly all of the Los Angeles theatres are not perfect for all purposes, but is unlikely, we believe, to disprove that some of such existing theatres have in the past played large or competitively significant dramatic or musical attractions and could in a significant competitive sense do so in the future. Furthermore, we do not believe that the operating policies of the present Los Angeles theatres are entitled to protection from the competition which will be offered by the Century whether it is operated by Select or another.

"Also, there can be wide ranges of evaluation of the rent to be paid over the period of a long-term theatre lease, and from all appearances Shubert has undertaken a rent which, in its judgment, will enable it to operate at a profit in what appears to be a reasonably competitive and expanding Los Angeles theatrical situation."

Nederlander's estimate of the situation is based on hypothesized violations of the decree and statutes by the defendants and others who may rent their New York, Chicago or Los Angeles theatres in the future. Any hypothesis, including that put forward by Nederlander, may be theoretically arguable in a case like this in which the parties and the Court are called upon to forecast the competitive effect of the proposed acquisition, but I conclude that the evidence adequately establishes that the proposed lease of the Century City complex theatre by Select will not restrain competition.

It is important to remember that the Court continues to have jurisdiction of the behavior of the defendants relating to the operation of their theatres and that, as stated in the Government's memorandum, the injunctive provisions of the decree prohibit defendants, including Select, from, among other things, restrictive and tying practices in regard to production, presentation and booking and from conditioning or tying the availability of any theatres to a producer upon an agreement to book into another theatre or to refrain from dealing with non-Shubert theatres. The Government's memorandum observes:

"We regard the judgment in the context of the Los Angeles situation as providing substantial assurances against Select improperly exercising exclusionary powers."

I agree.

## II.

In the light of the conclusions stated above, the application of Nederlander for leave to appear as *amicus curiae* becomes academic and is accordingly denied.

Select had objected to Nederlander's application on the grounds set forth in Judge Kaufman's memorandum opinion in this case dated March 24, 1960, that:

"The government is representing the public interest and it would be destructive of antitrust enforcement to allow a third party who has private litigation pending against some of the parties to the consent decree to inject himself into this litigation. The government is in a better position to determine what serves the public interest best, the private litigant being apt to confuse the public interest with his private interest."

■ While I agree with the views set forth in Judge Kaufman's opinion and in such analogous cases as United

States v. American Society of Composers, Authors and Publishers, 11 F.R.D. 511 (S.D.N.Y.1951), and United States v. Bendix Home Appliances, 10 F.R.D. 73 (S.D.N.Y.1949), nevertheless in this case the record was so sparse at argument on the motion as to require further illumination. It appeared to be, and has proved, advisable, in the public interest, to have allowed Nederlander to submit its offer of proof, but I find the present state of the record to be adequate and complete and that no further proceedings are required.

For the above reasons, Nederlander's application for leave to appear as *amicus curiae* is denied and the motion of defendant Select for leave to acquire a beneficial interest in and to operate the theatre being constructed at the Century City complex in Los Angeles, as set forth in its motion papers, is granted.

Submit order.