No. 13196

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

_____

THE STATE OF MONTANA on the Relation
of David G. Drum and Dorothy G. Drum,

Petitioner,

-vs-

THE DISTRICT COURT OF THE THIRTEENTH
JUDICIAL DISTRICT OF THE STATE OF MONTANA,
IN AND FOR THE COUNTY OF YELLOWSTONE, and
ROBERT H. WILSON, Presiding Judge Thereof,
and FIRST NATIONAL BANK AND TRUST COMPANY,
of Billings, Montana,

Respondents.

_____

ORIGINAL PROCEEDING:

Counsel of Record:

    For Petitioner:

        Hutton, Sheehy and Cromley, Billings, Montana
        John C. Sheehy argued, Billings, Montana

    For Respondents:

        Hibbs, Sweeney and Colberg, Billings, Montana
        William T. Wagner argued and Hugh Sweeney appeared,
        Billings, Montana

_____

Submitted: February 5, 1976

Decided: APR 19 1976

Filed: APR 19 1976

_____
                        Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

The original opinion in this cause was rendered on December 30, 1975 and appeared in 32 St.Rep. 1297. We granted rehearing on January 15, 1976, and rehearing was held on February 5, 1976. The original opinion is now withdrawn and this opinion substituted.

This case involved an application by relators for a writ of supervisory control to compel dismissal of a civil action against them unless Chase Manhattan Bank of New York City was joined as a party plaintiff.

The First National Bank and Trust Company, Billings, Montana, sued relators David G. Drum and Dorothy G. Drum, his wife, to collect a balance in excess of $1,000,000 allegedly owed on ten promissory notes. Relators moved to dismiss the action on the ground it was not prosecuted in the name of the real party in interest and for failure to join an indispensable party plaintiff. The foundation of this motion was relators' claim that First National's entire interest in six of the claims sued upon had been transferred to Chase Manhattan Bank prior to the commencement of the action, and part of First National's interest in the four remaining claims had been so transferred.

The district court, Yellowstone County, Hon. Robert H. Wilson, district judge, denied relators' motion to dismiss by order dated September 23, 1975.

The salient facts forming the basis of this litigation can be gleaned from the pleadings, attached exhibits, the deposition of Lee W. Johnson, and the affidavits of relator David G. Drum, and relators' attorney. These reveal extensive transactions relating generally to financing cattle operations and involving relators, three corporations controlled by relator David G. Drum, First National, and Chase.

In May 1972, Chase notified relator David G. Drum by letter that it would extend to him personally "through the vehicle of a loan participation with The First National Bank of Billings  a $2,000,000 share in a line of credit totaling $2,225,000.  Among other conditions, relator Dorothy G. Drum was required to execute a loan guarantee, which she did.  Personnel from Chase went to Billings and finalized a written loan agreement between relator David G. Drum and First National. At the time the loan agreement was executed, the maximum lending capacity of First National to a single borrower was approximately $750,000.

Pursuant to the loan agreement, relator David G. Drum borrowed money under the line of credit extended.  As he borrowed various sums from time to time, he would execute promissory notes payable to First National in the amount advanced.  First National, in turn, would execute a participation agreement or certificate wherein it sold to Chase a participating interest in each loan so made, adhering as closely as possible to the agreed 90% share of Chase in all outstanding loans.  The participation agreement provided, among other things, that Chase could direct First National to enforce the obligations of Drum under the notes.

The loan participation device was allegedly utilized by Chase in preference to a direct loan to Drum because of more favorable interest charges available under the laws of Montana (10%) than was permitted under the laws of New York (8-1/2%).

On May 2, 1975, at the request of Chase, First National filed an action against relators to collect the balance of principal owing, interest, attorney fees, and costs on ten promissory notes representing loans under the foregoing arrangement. The total principal indebtedness and participation alleged on each note was:

- 3 -

| Note | Chase | First National | Total |
|------|-------|----------------|-------|
| 1 | $ 200.00 | $ 28,520.72 | $ 28,720.52 |
| 2 | 806,704.20 | 14,214.71 | 820,918.91 |
| 3 | 1,000.00 | 5,205.57 | 6,205.47 |
| 4 | 72,450.00 | -0- | 72,450.00 |
| 5 | 500.00 | -0- | 500.00 |
| 6 | 2,795.20 | -0- | 2,795.20 |
| 7 | 12,460.31 | -0- | 12,460.31 |
| 8 | 1,000.00 | 2,000.00 | 3,000.00 |
| 9 | 162,000.00 | -0- | 162,000.00 |
| 10 | 6,966.01 | -0- | 6,966.01 |
| Totals | $1,066,075.72 | $ 49,940.72 | $1,116,016.42 |

This suit was filed as Cause No. 66792, in the district court of Yellowstone County. First National was the sole plaintiff. Defendants were David G. Drum and Dorothy G. Drum. Chase was not a party in this action.

Relators also alleged in the records before this Court that Chase extended a $15,000,000 line of credit to three corporations controlled by relator David G. Drum under a similar participation operation. The loan agreement was between First National on the one hand, and the three corporations on the other: Montana Beef Industries, Inc. in which Drum owns 92% of the outstanding capital stock; T-Bone Feeders, Inc., in which Montana Beef Industries, owns all the outstanding capital stock; and Feeder Supply Corporation in which Drum owns all the outstanding capital stock. As First National made the loans from time to time, it secured promissory notes from the borrowers and transferred participating interests to Chase.

The three corporations filed suit against First National and Chase under Cause No. 67125 in the district court of Yellowstone County. This action was based on the alleged collection of usurious interest by means of a scheme allegedly initiated by Chase to book "phony loans" to cover the excess of interest charges. Chase subsequently secured its dismissal from this suit on the ground that it can be sued only in a New York court under the provisions of the National Banking Act, 12 U.S.C. § 94.

- 4 -

Following dismissal of Chase in Cause No. 67125, relators filed three counterclaims against First National in its action against them on the ten promissory notes (Cause No. 66792).

The first counterclaim seeks attorney fees for relators in defending themselves to the extent of Chase's interest in the ten promissory notes based upon the principle of mutuality.

The second counterclaim by relator David G. Drum seeks the sum of $346,842.35 representing surplus funds from the sale of a building to Coors Brewery which Drum alleges was wrongfully exacted from him and applied to an alleged usurious loan indebtedness of Feeder Supply Corporation. According to him this corporation is wholly owned by him and was formed to provide storage facilities for grain; he put $200,000 of his personal funds into this corporation to provide the required equity for a loan of $680,000 from Chase and First National to construct the building. Chase made a direct loan to Feeder Supply Corporation of $618,000 and First National made a direct loan to this corporation of $61,200 each taking separate security instruments. About two years later Drum negotiated a sale of the building to Coors Brewery for $875,000 and offered to pay the total mortgage indebtedness in exchange for a release. First National and Chase declined, according to Drum, and when the sale was consummated they applied the surplus, over Drum's protest and objection, to alleged usurious loan indebtedness of Feeder Supply Corporation under the $15,000,000 line of credit extended to the three corporations, described heretofore.

The third counterclaim by relator David G. Drum seeks $279,500 in feed bills expended by Feeder Supply Corporation when First National refused to pay them as agreed under the terms of the loan agreement between First National and the three corporations extending the $15,000,000 line of credit.

In the meantime, relators' motion for dismissal of Cause No. 66792 was pending. The motion for dismissal was in two parts:

(1) A motion for outright dismissal of six of the claims evidenced by promissory notes on the ground that all interest of First National therein had been transferred to Chase prior to commencement of the action.

(2) A motion for dismissal of the remaining four claims evidenced by promissory notes unless Chase was made a party plaintiff on the ground that part of First National's interest therein had been transferred to Chase prior to commencement of the action.

Following denial of their motion for dismissal, relators applied to this Court for a writ of supervisory control seeking a judgment of dismissal unless Chase was joined as a party plaintiff.

The essence of relators' contentions is that Chase is an indispensable party under Rule 19(b), M.R.Civ.P. and in equity and good conscience the action should not proceed in its absence among the parties now before the Court. Relators claim that as a practical matter Chase is using First National as a "front" to collect debts of which Chase is more than 95% owner; that in so doing Chase is insulating itself in the courts of Montana from relators' just and valid defenses and counterclaims against Chase. Relators point out that Chase is hiding behind 12 U.S.C. § 94 in resisting claims against it in the courts of Montana. They contend that Chase's goal is to secure judgment against relators and execute on their property before relators can secure judgment against Chase in the courts of New York.

Respondents, on the other hand, contend that Chase is not an indispensable party to this suit by First National against the Drums to collect the ten promissory notes because of the nature

- 6 -

of the relationship between the Drums, First National and Chase in the loan transactions evidenced by the ten promissory notes. They point out that Chase is neither the owner, holder, or payee of any of the notes or the security, and accordingly complete relief can be accomplished between First National and the Drums without prejudice to the rights or liabilities of those against either. Respondents argue that neither Rule 19, M.R.Civ.P., nor recent decisions of this Court require that Chase be made a party, and in any event Chase cannot be sued in the courts of Montana under 12 U.S.C. § 94 of the National Banking Act. On this basis respondents conclude that Chase cannot be made a party to this action and that the action should proceed between First National and the Drums without dismissal.

We conclude that the nature of the loan transactions that underlie the ten promissory notes does not give rise to reciprocal rights and liabilities therein between the Drums and Chase. The loan agreement establishes the rights and liabilities between the parties to it, viz. First National and the Drums. The participation agreement or certificate establishes the rights and liabilities between the parties to it, viz. First National and Chase. Neither establishes any contractual relationship, rights or liabilities between the Drums and Chase.

The nature of the relationship is simply a borrower--lead--participant arrangement between Drum, First National and Chase respectively, which is described in detail in the article "The Developing Law of Participation Agreements", The Business Lawyer, April 1968, pp. 689-696. In the instant case Chase is neither a party to the loan agreement nor an owner, holder or payee of any of the notes. The entire loan transaction is between Drum and First National. First National is the owner, holder and payee of the notes and the sole secured party in the collateral.

Chase's only involvement is in the participation agreement. Such agreement is simply a shared loan where the "lead", First National, sold a share of the loan to the "participant", Chase. The relationship between the two is governed by the terms of the participation agreement or certificate. Here First National is the sole owner, holder and payee of the notes and has full dominion over the security. Drum owes First National the full amount of the loan as evidenced by the notes, and First National, in turn, owes the participant its share as evidenced by the participation certificate. Drum cannot challenge the amount of First National's claim on the ground that some portion of it is ultimately payable to Chase under the terms of the participation agreement. It is no concern of Drum what First National does with the proceeds of the repaid loan.

This relationship is not changed by the circumstances of the instant case where Chase may have been the primary mover, arranger or instigator of the loan; drafted and approved the loan documents; held a major share of the "action"; and "called the tune". The nature of the transaction and relationship of the parties is governed by the loan documents, principally the loan agreement between Drum and First National and the participation agreement between First National and Chase.

Relators' contention that Chase is an indispensable party under Rule 19(b), M.R.Civ.P., and that the action should not proceed in its absence is not tenable. Rule 19(b), provides:

> "(b) DETERMINATION BY COURT OF WHENEVER JOINDER NOT FEASIBLE. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second,

> the extent to which, by protective provisions
> in the judgment, by the shaping of relief, or
> other measures, the prejudice can be lessened
> or avoided; third, whether a judgment rendered
> in the person's absence will be adequate; fourth,
> whether the plaintiff will have an adequate
> remedy if the action is dismissed for nonjoinder."

In the first place, in our view, Rule 19(b) is not applicable to this case. It applies only to "a person as described in subdivision (a)(1)-(2) hereof." The pertinent part of Rule 19(a) describing such person provides:

> "(a) PERSONS TO BE JOINED IF FEASIBLE. A person
> who is subject to service of process shall be
> joined as a party in the action if (1) in his
> absence complete relief cannot be accorded among
> those already parties, or (2) he claims an interest
> relating to the subject of the action and is so
> situated that the disposition of the action in his
> absence may (i) as a practical matter impair or
> impede his ability to protect that interest or
> (ii) leave any of the persons already parties
> subject to a substantial risk of incurring double,
> multiple, or otherwise inconsistent obligations
> by reason of his claimed interest. * * *"

Here complete relief can be accorded First National and the Drums without Chase being made a party. First National can adjudicate its claims for collection of the notes. Chase is not a real party in interest because the holder of the notes is entitled to sue in its own name, section 87A-3-301, R.C.M. 1947, and additionally First National is the owner and sole payee on the notes. The Drums can adjudicate any defenses or claims involving the notes against First National. Any interest of Chase relating to the notes will not in Chase's absence impair or impede its ability to protect that interest, because it can look to First National for relief under the terms of its participation agreement. Judgment in the present case would not subject the Drums to the risk of multiple or otherwise inconsistent obligations as the rights and liabilities of the Drums under the notes would be finally concluded. Accordingly, Chase is not "a person as described in subdivision (a)(1)-(2)" of Rule 19(a) so Rule 19(b) is inapplicable.

- 9 -

Assuming, arguendo, that Rule 19(b) did apply, we would also reach a result denying joinder of Chase. Essentially the Drums seek to expand the scope of this action beyond the ten promissory notes sued upon, so they can press claims in the Montana courts against Chase directly arising out of unrelated loan transactions with corporations that David G. Drum controls.

At the outset it is clear that Chase cannot be sued in the courts of Montana under the provisions of the National Banking Act. The relevant statute, 12 U.S.C. § 94, provides:

> "Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."

This statute is mandatory and not permissive. Kader v. First National Bank of Fort Myers (1975), 387 F.Supp. 535; Northside Iron & Metal Co., Inc. v. Dobson & Johnson, Inc. (1973), 480 F.2d 798. It even prevents joinder in the same action of national banks located in different states or districts who were sued for damages based on a civil conspiracy to defraud. Mercantile National Bank at Dallas v. Langdeau (1963), 371 U.S. 555, 83 S.Ct. 520, 9 L ed 2d 523. Chase simply cannot be sued in the courts of Montana, absent consent or waiver. While we are not in sympathy with this legislation, we are compelled to follow it.

Finding themselves in this position, the Drums seek to compel joinder of Chase on pain of dismissal of this action. Where do the equities lie? Admittedly, it would be advantageous to Drums to get Chase before the Montana court in this action and press their alleged counterclaims against Chase directly. But where will that leave First National if the action is dismissed for nonjoinder? It will be left with no remedy in the courts of its own state to collect the money it loaned to the Drums.

Drums, on the other hand, can assert any valid defense or counterclaim they may have on the notes as readily against First National as they can against Chase in the instant action. In our view the balance of equities lies with First National and the Drums' contention that under Rule 19(b), M.R.Civ.P., Chase should be made a party or the action dismissed, cannot be sustained.

Nor do this Court's recent decisions in State ex rel. Slovak v. District Court, 166 Mont. 485, 534 P.2d 850, 32 St. Rep. 420, and State ex rel. Nawd's TV and Appliance Inc. v. District Court, ___Mont.___, 543 P.2d 1336, 32 St.Rep. 1222, require joinder of Chase. These cases involve subrogated insurers who stand in the shoes of their insureds and can sue the defendant directly. Here Chase does not stand in First National's shoes with the right to sue Drums directly, but must look to First National for relief under the terms of the participation agreement.

For the foregoing reasons, we hold the district court's order of September 23, 1975, was correct. This application for supervisory control is dismissed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

- 11 -