UNITED STATES of America,
Plaintiff,

v.

AMERICAN SOCIETY OF COMPOSERS,
AUTHORS AND PUBLISHERS,
Defendant-Respondent.

Application of SHENANDOAH VALLEY
BROADCASTING, INC., et al.,
Petitioners,
For the Determination of Reasonable
License Fees.

Application of COLUMBIA BROADCAST-
ING SYSTEM, INC., Petitioner,
For the Determination of a Reasonable
Fee for a License to Perform Publicly
by Television Broadcasting on its Local
Stations, Any, Some or All of the Musi-
cal Compositions in the Repertory of
American Society of Composers, Au-
thors and Publishers.

Application of COLUMBIA BROADCAST-
ING SYSTEM, INC., Petitioner,
For the Determination of a Reasonable
Fee for a License to Perform Publicly
by Television Broadcasting on its Net-
work, Any, Some or All of the Musical
Compositions in the Repertory of Amer-
ican Society of Composers, Authors and
Publishers.

Application of NATIONAL BROADCAST-
ING COMPANY, Inc., Applicant,
For the Determination of Reasonable Li-
cense Fees for Its Television Broad-
casting Stations.

Application of NATIONAL BROADCAST-
ING COMPANY, Inc., Applicant,
For the Determination of Reasonable
License Fees for Its Television
Network.

United States District Court
S. D. New York.

Sept. 13, 1962.

See also 202 F.Supp. 339; 202 F.
Supp. 340.

Richard G. Green, New York City, for petitioner Columbia Broadcasting System, Inc.

Sullivan & Cromwell, New York City, Herman Finkelstein, New York City, Cox, Langford, Stoddard & Cutler, Washington, D. C., for defendant-respondent.

Donovan, Leisure, Newton & Irvine, New York City, for petitioners Shenandoah Valley Broadcasting, Inc., et al.

Hawkins, Delafield & Wood, New York City, for applicant American Broadcasting-Paramount Theatres, Inc.

Cahill, Gordon, Reindel & Ohl, New York City, for applicant National Broadcasting Company, Inc.

RYAN, Chief Judge.

This petition, filed by more than 335 local television stations situated throughout the United States, seeks fixation of a reasonable royalty for a license under Section IX(A) and (B) of the Amended Consent Judgment, entered on March 14, 1950 in the antitrust suit entitled United States v. ASCAP. While theoretically the petition is brought under the provisions of the decree for the fixing of fees, what it really seeks from ASCAP is a radically different license from that un-

der which petitioners have been operating under the decree for the past twelve years and only secondly the fixing of a reasonable fee for such license.

The type of license sought is neither the blanket nor per program license described in the judgment. Petitioners would have a composite sort of license, containing a little bit of both, which would grant them the right to use any, some or all of the compositions of ASCAP's repertory on all their locally-originated broadcasts, while excluding from such license music performing rights for network programs and pre-recorded material produced after February 28, 1962 by persons other than petitioners; as to these, petitioners would demand that the rights be secured, cleared and paid for at the source.

Petitioners made written application to ASCAP for such license and upon ASCAP's refusal to issue such license, they filed the petition now before us.

The underlying and immediate question raised by this petition is the court's power under the decree to compel ASCAP to issue such license; until that is determined the question of a fee under such license is not reached.

It is petitioners' position that the power to fix reasonable fees encompasses the power to fix a type of license which the court finds to be reasonable; that this construction of the decree is justified by the objectives and purposes of the judgment and that consequently no amendment to the decree is necessary in order to grant the application.

The government is in accord with petitioners on the principle that if the court finds the type of license requested to be reasonable, it has the power to compel its issuance; it, however, expresses no opinion on the reasonableness of the license. And it is ASCAP's position that, apart from the express prohibitions and restrictions as to the types of licenses it may not force on an applicant and the affirmative duty it has to offer upon request by an applicant a choice of the types of license enumerated in the judgment, it is free to negotiate with an applicant for a particular kind of license on particular terms, and that, therefore, the court lacks power to direct the issuance of the license sought, irrespective of its reasonableness (which it strenuously disputes).

We agree with the position taken by ASCAP, for the mere fact that a particular license requested may be more reasonable than that which has been given in the past, does not impose upon ASCAP the duty to grant such license, nor does it give the court additional powers not contained in the amended judgment.

Until 1949 ASCAP had granted royalty-free licenses to all television stations for the use of its repertory; this was in an endeavor to assist the stations and to enable the industry to gain stability. In 1948 ASCAP suggested that the television industry negotiate with it for television licenses. Local and network blanket television licensing agreements were made in 1949, 1954 and 1958; substantially the same provisions were contained in each agreement. The petitioners, all local stations, have operated and continue to operate under a local blanket license granting them the right to play the entire repertory of ASCAP on all locally-originated programs. For this license they pay a fee which is based on a percentage of their "net receipts from sponsors", excluding any transcribed programs which ASCAP licenses at the source. Petitioners, dissatisfied with this type of license, would have the court cast the burden of paying for the performance rights on the pre-recorded programs on the producers rather than on petitioners; a right and option which the producers now have under their decree and which ASCAP is compelled to grant them. ¶V–B

Nowhere in the judgment is there any provision explicitly or impliedly requiring ASCAP to issue the type of license requested, and petitioners do not so urge. They do argue, however, that the granting of such license would further the objectives of the judgment as a whole whereas a denial would frustrate them, and that looking beyond the exact word-

ing of the decree, as a court of equity must, the power of this court to compel the issuance of the license sought is clear.

More specifically, petitioners in support of their application point to Sections VI and IX as giving this court "broad equitable powers" to grant the type of license they seek.

Section VI provides for the granting of a nonexclusive license to perform "all of the compositions in the ASCAP repertory." While this provision standing alone might lend itself to an interpretation that "all" could encompass a direction to grant licenses on "any or some" as desired by an applicant, when read with the sentence following it and with the other provisions of the judgment, particularly Section VII(B) and (C), it is clear that "all" refers to a blanket license to include the entire repertory as distinguished from the other type of license (the "per program" license) which is limited to a specified composition. The balance of this Section VI deals with just such a single license.

The entire Section IX, which speaks of a fee for the "license requested" following application for a license on "any, some or all" of the compositions, deals with the procedure for determining reasonable license fees, not types of licenses. The words "license requested" do not mean that an applicant for a license is given the right under the decree to compel ASCAP to give any type of license it demands and have this court fix the fee. Each section of the Amended Judgment must be read and interpreted in the light of the entire judgment. (Swift & Co. v. United States, 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587 (1928).) The words "license requested" do not remove the limitations as to the extent, type and nature of licenses found in the other provisions of the judgment.

In Section IV(E), ASCAP is restrained from negotiating with any motion picture theatre exhibitor for a license to exhibit movies that use its compositions. This section makes no mention of television broadcasters, who are in many respects similarly situated to the theatre exhibitors. It is plain that the television broadcasters were not intended to be included within the prohibitions of Section IV(E).

Section VII deals primarily with the computation of fees for radio and television broadcasting. Section VII(B) provides that ASCAP must issue per-program licenses, on written request, and that the stations be given an economic choice between per-program and blanket licenses—there its obligation ends. There is no mention made of any type of license other than per-program or blanket. Section VIII refers to "the various types of licenses", clearly a reference to Section VII(B) and the licenses there described, the economic choice between per-program and blanket licenses, and the fees therefor, and again no other type license is mentioned.

Petitioners urge that the type of license they seek would give greater effect to provisions of the Amended Judgment, which, they argue, is rendered ineffectual by the present type of broadcasting licenses. If this be so (and we make no finding either way), relief could only be had by a reappraisal of the Amended Judgment to determine if a further amendment were warranted; this only after hearings on a petition filed for such relief by a party to the suit.

Petitioners were not parties to the judgment; they have petitioned only as beneficiaries under it and they may not under cover of the protection from discrimination afforded them under its provisions indirectly effect an amendment to that judgment so as to wrest from ASCAP a type of license it is now under no judicial compulsion to grant. Here we do not have a petition for modification of the consent judgment filed by a party to the judgment.

The petition will be entertained if petitioners so elect to proceed within ten (10) days from the date hereof, as one filed for fixation of reasonable fees on a renewal of the type of license that is now and for many years past has been held by them.