06-3329-cv
United States v. City of New York, et al.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: June 24, 2008          Decided: August 19, 2008)

Docket No. 06-3329-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA, ex rel. IRWIN EISENSTEIN,

    Plaintiff-Appellant,

        -  v.  -

CITY OF NEW YORK, MICHAEL BLOOMBERG, JOHN DOE, JANE DOE,

    Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:  WINTER, MINER, and CABRANES, Circuit Judges.

Motion to dismiss an appeal from the dismissal of a complaint by the United States District Court for the Southern District of New York (Deborah A. Batts, Judge). Appellant brought a False Claims Act qui tam action in the name of the United States. Appellant filed a notice of appeal more than 30 days after the dismissal. Appellees move to dismiss the appeal as untimely, arguing that because the United States is not a party, the notice of appeal was required to have been filed within 30 days of final judgment, Fed. R. App. P. 4(a). The motion to dismiss is granted.

LEWIS D. ZIROGIANNIS (Marc A. Weinstein on the brief), Hughes Hubbard & Reed LLP, New York, New York for Plaintiff-Appellant.

ANDREW G. LIPKIN, of counsel (Michael A. Cardozo, Corporation Counsel of the City of New York) New York, New York for Defendant-Appellees.

Michael J. Garcia, United States Attorney for the Southern District of New York (Sheila M. Gowan and Jeffrey S. Oestericher, Assistant United States Attorneys, on the brief) New York, New York, for amicus curiae, the United States of America.

WINTER, Circuit Judge:

Irwin Eisenstein appeals from the dismissal of his complaint by Judge Batts. The City of New York has moved to dismiss the appeal, asserting that the notice of appeal was untimely. The issue is whether a private party bringing a False Claims Act qui tam action must file a notice of appeal within the 30 days after judgment applicable to civil actions generally, Fed. R. App. P. 4(a)(1)(A), or within the 60 days applicable when the United States is a party, Fed. R. App. P. 4(a)(1)(B). We hold that, where the United States has declined to intervene in a False Claims action, the United States is not a party to the action within the meaning of Rule 4(a)(1), and, therefore, a notice of appeal must be filed within 30 days. Because Eisenstein filed his notice of appeal more than 30 days after the entry of judgment, his appeal is untimely, and we are without jurisdiction

2

to consider it.[1]

On January 17, 2003, Eisenstein and four City employees, proceeding pro se, filed this action against the City and various municipal officials.  The gravamen of the complaint is that it is unlawful for the City, as a condition of employment, to require non-resident City-employees to pay a fee equivalent to the municipal income taxes paid by resident City-employees.  The complaint alleges that this practice is actionable under various theories of liability, most notably as a violation of the False Claims Act, 31 U.S.C. §§ 3729-3733.[2]  Eisenstein contends that because non-resident employees are able to deduct this fee as an expense for federal income tax purposes, their taxable income is less than it might otherwise be, and in this way, the City is depriving the federal government of tax revenue.  The complaint initiates a qui tam action, in which the plaintiffs are to serve

_____

[1]Our decision in United States ex rel Mergent Services and John Bal,                       , filed this day, holds that pro se litigants may not pursue qui tam actions under the False Claims Act.  That principle would also bar this suit, but we would have to have appellate jurisdiction in this matter to reach that issue.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause." (quoting Ex parte McCardle, 74 U.S. 506, 514 (1868)).

[2]The False Claims Act imposes civil liability upon "any person" who, inter alia, "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval."  31 U.S.C. § 3729(a).  Defendants may be liable for treble damages and a civil penalty of up to $10,000 per claim. Id.

as relators, suing the City in the name of the United States. The United States declined to intervene.[3]

The City moved to dismiss the complaint for failure to state a claim. On March 31, 2006, the district court granted the motion to dismiss, and, on April 12, 2006, rendered final judgment for the City. On June 5, 2006, or 54 days later, Eisenstein filed his notice of appeal.[4]

On December 26, 2006, we ordered Eisenstein and the City "to brief the issue of whether the thirty-day time limit for filing a notice of appeal . . . or the sixty-day time limit for filing a notice of appeal . . . , which applies when the United States is a party, applies to a qui tam action where the United States

---

[3]An action brought under the False Claims Act may be commenced in one of two ways. First, the federal government itself may bring a civil action against a defendant. 31 U.S.C. § 3730(a). Second, as is the case here, a private person, or "relator" may bring a qui tam action "for the person and for the United States Government," against the defendant, "in the name of the Government." Id. § 3730(b)(1). Under such circumstances, the Government may elect to intervene, and if it recovers a judgment, the relator gets a percentage. See id. § 3730(d)(1). If the Government declines to intervene, the relator may pursue the action on his own, and may get a larger percentage of the judgment if he prevails. See id. § 3730(d)(2); United States v. Baylor Univ. Med. Ctr., 469 F.3d 263, 265 (2d Cir. 2006).

[4]The only notice of appeal specifies that Eisenstein is appealing the judgment of the district court. See Fed. R. App. P. 3(c)(1)(A) (requiring that the notice of appeal "specify the party or parties taking the appeal by naming each one in the caption or body of the notice"). Therefore, he is the only appellant.

4

declines to intervene in the proceedings." United States ex. rel. Eisenstein v. City of New York, No. 06-3329 (2d Cir. Dec. 26, 2006). We also ordered the United States to brief this issue as amicus curiae. On January 25, 2007, the City filed the present motion to dismiss, based on, inter alia, the timeliness issue. Thereafter, we appointed pro bono counsel for Eisenstein, solely to address the City's motion to dismiss.

The government played no role in this litigation until filing an amicus brief as ordered by the court.[5] Because we conclude that the United States is not a "party" to this action for the purposes of Fed. R. App. P. 4(a)(1)(A) and (B), we further conclude that Eisenstein's notice of appeal was untimely. We are therefore without jurisdiction, and the City's motion is granted.

"[I]n a civil case, . . . the notice of appeal . . . must be filed with the district clerk within 30 days after the judgment or order appealed from is entered." Fed. R. App. P. 4(a)(1)(A); see 28 U.S.C. § 2107(a) (prescribing that "no appeal shall bring any judgment . . . of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment"). However, "[w]hen the United States or its officer or agency is a party, the notice of appeal

---

[5]That brief urges us to apply the 30 day rule of Fed. R. App. P. 4(a)(1)(A).

5

may be filed by any party within 60 days after the judgment or order appealed from is entered." Fed. R. App. P. 4(a)(1)(B); see 28 U.S.C. § 2107(b) (providing that "[i]n any [civil] action . . . in which the United States or an officer or agency thereof is a party, the time as to all parties shall be sixty days from such entry"). The term "party" is not expressly defined for these purposes by either statute or the appellate rules.[6]

When interpreting a rule of procedure, we review the text for its "plain meaning." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 391 (1990); see also United States v. Capoccia, 503 F.3d 103, 109 (2d Cir. 2007). To the extent that the text is ambiguous, we seek to determine the intent by looking to other materials, such as the Advisory Committee Notes that often accompany the rules. See Sorensen v. City of New York, 413 F.3d 292, 296 (2d Cir. 2005).

In the present case, the language of Rule 4(a)(1)(B) does not support Eisenstein's contention that he was entitled to file his notice of appeal within 60 days of the rendering of judgment. The text of Rule 4(a)(1)(B) states that the extended filing

---

[6]"Compliance with Rule 4(a) is 'mandatory and jurisdictional.'" Williams v. KFC Nat'l Mgmt. Co., 391 F.3d 411, 415 (2d Cir. 2004) (quoting Browder v. Director, Dep't of Corr., 434 U.S. 257, 264 (1978)). That is, "[i]f a notice of appeal is filed beyond the period allowed by [Rule 4(a)], the court of appeals lacks subject matter jurisdiction to hear the appeal." Endicott Johnson Corp. v. Liberty Mut. Ins. Co., 116 F.3d 53, 56 (2d Cir. 1997).

6

period applies when the United States is a "party" to the action. We hold that the United States is not a "party" to this action for the purposes of the deadline for filing a notice of appeal.

In our view, the United States is not a party for these purposes to a qui tam action when the government fails to intervene or to raise or resist any legal claim. Where a private person brings suit under the False Claims Act, the Act allows the government "to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information." 31 U.S.C. § 3730(b)(2). Before that 60-day period expires, the Act mandates that the government carry out one of two choices: "(A) proceed with the action, in which case the action shall be conducted by the Government; or (B) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action." Id. § 3730(b)(4). While the Act allows the Government to intervene at a later date, it may do so only upon a showing of good cause. Id. § 3730(c)(3). When the Government declines to intervene, the Act specifies that the person who brought the suit has the "right to conduct the action." See id. § 3730(c)(3). Absent a specific request, the government need not be served with the pleadings thereafter filed by litigants. Id. § 3730(c)(3). Moreover, the United States "is not liable for expenses which a person incurs in bringing an action under" the

7

Act, id. § 3730(f), notwithstanding the fact that the claim is that of the United States and that such actions are brought in the name of the United States. See 31 U.S.C. § 3730(b); see also Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 774 (2000) (describing claims under the Act as belonging to the United States). And while under the Act, the government must consent to any settlement that would call for the dismissal of a qui tam action, see id., this is surely a sensible requirement, inasmuch as the United States, is the "real party in interest," and is otherwise bound by the relator's actions for purposes of res judicata and collateral estoppel. See Stoner v. Santa Clara County Office of Educ., 502 F.3d 1116, 1126 (9th Cir. 2007).

These provisions indicate that the United States is not a party to litigation for all purposes brought by private persons under the Act, absent an election to intervene. As used in Rule 4(a)(1), the word "party" refers to the person participating in the proceedings with control over litigation. The government, once having declined to intervene at the outset of an action may not participate in it, save for asking that it be served with pleadings and for approving any withdrawal with prejudice, without moving to intervene upon a showing of good cause. The inability to participate without moving to intervene is simply not consistent with the principal characteristics of being a party to litigation.

8

Eisenstein argues that the extended 60-day filing period applies here because the United States is a "real party in interest" in False Claims Act qui tam actions. See United States ex rel. Stevens v. Vt. Agency of Natural Res., 162 F.3d 195, 202 (2d Cir. 1998), rev'd on other grounds, 529 U.S. 765 (2000). This argument assumes that the United States' status as a "real party in interest" is equivalent to the status of a "party" to litigation as contemplated by the drafters of Rule 4(a). We find this assumption faulty. "Generally, the 'real party in interest' is the one who, under the applicable substantive law, has the legal right which is sought to be enforced or is the party entitled to bring suit." In re Comcoach Corp., 698 F.2d 571, 573 (2d Cir. 1983). The litigation status of a real party in interest and a "party" to litigation may overlap for some purposes while being quite distinct for others. See, e.g., Arkwright-Boston Mfrs. Mut. Ins. Co. v. New York, 762 F.2d 205, 209 (2d Cir. 1985) (concluding it was not error to fail to join a real party in interest as a plaintiff to a diversity action). Indeed, the term "real party in interest" exists only to distinguish the litigation interests it covers from those of a "party" who is the person responsible for prosecuting the action. The use of the "real party in interest," as a term of art, permits courts to intelligibly discuss those instances in which an individual with a substantive right must appear as a party to litigate a claim, and those instances in which another may appear

9

in his stead.  Compare Local Union No. 17 v. Mason & Hanger Co., 217 F.2d 687, 691-95 (2d Cir. 1954) (concluding that a union was not entitled under the Labor Management Relations Act to bring a civil conspiracy claim on behalf of its members, the real parties in interest), with Blau v. Lamb, 314 F.2d 618, 619-20 (2d Cir. 1963) (providing that the real party in interest, a corporation, need not be the one to bring a claim under Section 16(b) of the Securities Exchange Act of 1934).  Accordingly, the United States' status as a real party in interest is by itself insufficient to trigger the 60-day filing period.

The failure of Rule 4(a)(1)(b)'s language to include situations in which the United States is a "real party in interest" in an action cannot be viewed as simply an oversight. The term "real party in interest" is a term of art used in the rules of procedure.  See Fed. R. Civ. P. 17(a)(1) (requiring that actions be brought in the name of the "real party in interest"); Fed. R. Civ. P. 15 Notes of Advisory Committee on 1966 amendments (noting that under the rules, there is mechanism for correcting a failure to name the "real party in interest" to an action).  We therefore regard the omission of "real party in interest" from Rule (a)(1)(B) as meaningful.

We turn now to the intent underlying Rule 4(a)(1)(B).  The purpose of providing a 60-day filing period, rather than the usual 30 days, is to account for the slow machinery of government when the United States is a party responsible for prosecuting the

10

action.  "The Advisory Committee's Notes of 1946 to Rule 73(a) of the Federal Rules of Civil Procedure, the predecessor of Rule 4(a), explain that the government's institutional decisionmaking practices require more time to decide whether to appeal and that in fairness, the same time should be extended to other parties in a case in which the government is a party."  United States ex rel. Russell v. Epic Healthcare Mgmt. Group, 193 F.3d 304, 306 (5th Cir. 1999) (citing 20 Moore's Federal Practice § 304.11[2] (3d ed. 1997)).[7]  This rationale is obviously inapplicable to the present case, where the government has played no part in the underlying litigation other than to decline to participate in it.

Our decision is not inconsistent with United States v. American Society of Composers, Authors & Publishers, 331 F.2d 117 (2d Cir. 1964).  In American Society of Composers, we applied the 60-day limit, but only because the United States actively participated in the litigation.  In that matter, several television stations sought an order requiring the licensing of the rights to use various musical compositions, rights that were held by the American Society of Composers, Authors and Publishers (the "Society").  Am. Soc'y of Composers, 317 F.2d 90, 91 (2d Cir. 1963).  The stations sought these licenses purportedly pursuant to a consent decree entered in a previous action brought

---

[7]This rationale applies with respect to Rule 4(a)(1)(B), which is derived from the former Rule 73(a) "without any change of substance."  Fed. R. App. P. 4 Notes of Advisory Committee on 1967 Adoption of Subdivision (a).

11

by the United States against the Society under the Sherman Act. Id.  The government actively participated in the ensuing litigation, weighing in on the justiciability of the stations' claims before the district court, 208 F. Supp. 896, 897 (S.D.N.Y. 1962), and on appeal, 331 F.2d at 120.

When a dispute arose as to the timeliness of an appeal raising issues that pertained only to the claims brought by the television stations and the Society and not to the antitrust claims of the United States resolved in the consent decree, id. at 119-20, we interpreted the predecessor to Rule 4(a) and concluded that the 60-day filing period applied.  In doing so, we relied on the text of the former rule, which provided a 60-day period to file an appeal in any action "in which the United States or an officer or agency thereof is a party." Id. at 119 (citing the former Fed. R. Civ. P. 73(a)).  Because the rule required only that the United States be a party for the 60-day period to apply, we rejected the notion that this longer filing period was triggered only when the United States had a particular interest in the outcome of the appeal. Am. Soc'y of Composers, 331 F.2d at 119.  In so doing, we cautioned that it is "undesirable to read into a procedural statute or rule, fixing the time within which action may be taken, a hidden exception or qualification that will result in the rights of clients being sacrificed when capable counsel have reasonably relied on the language." Id.

12

This sound principle is entirely consistent with our ruling today. Rather than establishing filing deadlines based on the nature of, or interests in, the claims asserted on appeal, we look, as we did in American Society of Composers, to the plain requirements of the rules, which call for a determination of whether the United States was a party in the district court. That is, what is of import is neither that Eisenstein brought a False Claims Act claim in the name of the United States, nor that the United States may be entitled to a portion of the recovery if Eisenstein prevails; what is of import is that the United States played no role in this matter before the district court.

We do note that our holding in this matter puts us in conflict with three of four courts of appeals that have considered this issue. See United States ex rel. Lu v. Ou, 368 F.3d 773, 775 (7th Cir. 2004) (applying the 60-day limit); United States ex rel. Russell v. Epic Healthcare Mgmt. Group, 193 F.3d 304, 308 (5th Cir. 1999) (same); United States ex rel. Haycock v. Hughes Aircraft Co., 98 F.3d 1100, 1102 (9th Cir. 1996) (same); compare United States ex rel. Petrofsky v. Van Cott, Bagley, Cornwall, McCarthy, 588 F.2d 1327, 1329 (10th Cir. 1978) (per curiam) (applying the 30-day limit). Specifically, in Hughes Aircraft, the Ninth Circuit concluded that in False Claims Act qui tam cases, the application of the 60-day period was required under a "literal interpretation" of Rule 4(a), and that such an

13

interpretation was called for in the interest of affording would-be appellants the ability "to figure out which time period applies, easily, without extensive research, and without uncertainty." Hughes Aircraft Co., 98 F.3d at 1102. Confronted with this same issue, the Fifth Circuit has since adopted the Ninth Circuit's reasoning from Hughes Aircraft. See Epic Healthcare Mgmt. Group, 193 F.3d at 308.

We are not similarly persuaded. As discussed in detail supra, we do not agree that a "literal" reading of Rule 4(a) accords a 60-day filing period to private individuals who bring suit in the name of the United States. Nor do we share the fear of other courts that confusion may result from applying Rule 4(a)(1)(B) in the manner we do today. In the circumstances described, counsel of minimal competence will take pause upon reading Rule 4(a) to consider whether the United States was actually a "party" to the action. Even if doubt existed, any reasonable counsel would allay these concerns by sensibly filing a notice of appeal within 30 days. In fact, there is little history of confusion, and, even with this decision, the issue has not arisen in the majority of circuits despite the many decades in which the provisions of Rule 4(a)(1)(B) and False Claims Act qui tam actions have coexisted.

We are similarly not persuaded by the reasoning employed by the Seventh Circuit in United States ex rel. Lu v. Ou. In

14

addition to reciting the grounds relied upon by the Ninth and Fifth Circuits in Hughes Aircraft and Epic Healthcare, the Seventh Circuit appears to have concluded that the United States must be a party to qui tam actions because relators by themselves lack standing to sue. Ou, 368 F.3d at 775. Respectfully, we believe this reasoning cannot be reconciled with the Supreme Court's decision in Vermont Agency of Natural Resources v. United States ex. rel. Stevens, 529 U.S. 765 (2000).

In Stevens, the Supreme Court specifically identified the source of relator-standing in False Claims Act qui tam actions, concluding that relators have standing to sue not as agents of the United States, but as partial-assignees of the United States' claim to recovery. Stevens, 529 U.S. at 773-74. This is so even where the assignor, the United States, declines to intervene in the case. See id. at 770 (noting the Government's failure to intervene). According to Stevens, relators have standing in their own right, id. at 773-74, and, therefore, if they otherwise comply with the requirements of the False Claims Act, they can bring an action in the name of the United States without the United States appearing as a party and participating in the litigation.

Ultimately, we are more inclined to agree with the views of the Tenth Circuit, the first court of appeals to have taken up this issue. See Van Cott, 588 F.2d at 1329. In Van Cott, as in

15

the present case, the government declined to intervene in a qui tam action, and, as a result, a relator pursued a False Claims Act claim on his own.  Id. at 1328.  Under such circumstances, the Tenth Circuit properly characterized the United States' participation in the case as "tangential or nominal," and soundly recognized that it "was merely a statutory formality" that the relator brought the suit in the name of the United States.  Id. at 1329.  We also agree with its observation that, under such circumstances, "[a]ll parties [are] aware the government [has] disclaimed any participation in the suit" and that there is no "need for more than the usual 30 days to make the appeal."  Id.

We therefore grant the City's motion to dismiss.