

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-30-2008

# Rodriguez v. Our Lady Lourdes Med

Precedential or Non-Precedential: Precedential

Docket No. 06-5207

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Rodriguez v. Our Lady Lourdes Med" (2008). *2008 Decisions.* Paper 3.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/3

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-5207

_____

RENEE RODRIGUEZ; BARBARA KING, In the Name of
the United States Government
Pursuant to the False Claims Act, 31
U.S.C. Section 3730, and Individually Pursuant to the New
Jersey Conscientious Employee Protection Act

Appellants

v.

OUR LADY OF LOURDES MEDICAL CENTER

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 06-cv-00129)
District Judge: Honorable Robert B. Kugler

_____

Submitted Under Third Circuit LAR 34.1(a)
December 1, 2008

_____

Before: AMBRO, WEIS, and VAN ANTWERPEN, <u>Circuit</u>
<u>Judges</u>

(filed: December 30, 2008)

Ross Begelman, Esquire
Marc M. Orlow, Esquire
Begelman & Orlow, P.C.
411 Route 70 East, Suite 245
Cherry Hill, NJ   08034

  Counsel for Appellants

Brian Flaherty, Esquire
Gregory A. Lomax, Esquire
Drew Wixted, Esquire
Wolf, Block, Schorr and Solis-Cohen LLP
1940 Route 70 East, Suite 200
Cherry Hill, NJ   08003

  Counsel for Appellee

_____

OPINION OF THE COURT
_____

AMBRO, <u>Circuit Judge</u>

  Renee Rodriguez and Barbara King filed a *qui tam* complaint pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq.*, against their former employer, Our Lady of Lourdes Medical Center (the "Medical Center"), a New Jersey health

care provider.  The United States declined to intervene in the action, and the District Court ultimately dismissed the complaint for failure to state a claim for which relief can be granted. Rodriguez and King then filed a notice of appeal 56 days after the entry of judgment.  We decide whether this appeal is subject to the 30-day filing deadline that generally applies to civil suits or the 60-day deadline that applies when the United States is a party.

We hold that, though the United States declined to intervene in the action, the 60-day deadline still applies and that Rodriguez and King's notice of appeal was therefore timely. Nonetheless, we affirm the District Court's dismissal on the merits.

## I. Facts and Procedural History

Rodriguez and King are licensed practical nurses who were formerly employed by the Medical Center.  In January 2006, they filed a *qui tam* complaint against the Center in the District of New Jersey, alleging fraud on the Government in violation of the False Claims Act.[1]  The allegations in the

---

[1] *"Qui tam* actions have a long history and were used in England before the foundation of this country."  *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 509 (3d Cir. 2007).  The term "*qui tam*" itself is a shortening of "the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means 'who pursues this action on our

complaint centered on the Bergan Lanning Health Center ("Bergan Lanning") in Camden, New Jersey. According to the complaint, Bergan Lanning is jointly operated by the Medical Center and the Camden County Department of Health and Human Services and receives funding from the federal Government. Rodriguez and King alleged that, while employed by the Medical Center, they were assigned to do work with outreach programs housed by Bergan Lanning that provide medical services to the homeless and the uninsured working poor.[2] They asserted that, beginning in June 2004, beneficiaries

Lord the King's behalf as well as his own.'" *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 769 n.1 (2000). Under modern practice, *qui tam* actions are brought by private plaintiffs on behalf of the Government in exchange for some portion of any resulting damages award. *See id.* at 773–74.

Rodriguez and King's complaint also alleged that they were terminated from their employment for objecting to illegal practices in violation of New Jersey's Conscientious Employee Protection Act, N.J. Stat Ann. § 34:19-1 *et seq*. The District Court declined to exercise supplemental jurisdiction over this claim when it dismissed the False Claims Act action, *Rodriguez v. Our Lady of Lourdes Med. Ctr.*, No. 06-0129, 2006 WL 3193838, at *2 (D.N.J. Nov. 1, 2006), and it is not before us.

[2] According to the complaint, Rodriguez was assigned to work with Project H.O.P.E. (Homeless Outreach Program Enrichment), which provides health care and social services to homeless individuals and families, while King was assigned to

of those programs could get prescriptions filled by persons who were not licensed pharmacists under the New Jersey Pharmacy Act, N.J. Stat. Ann. § 45:1-1 *et seq.*[3]  This, they contended, amounted to a violation of the False Claims Act insofar as "allowing non-licensed individuals . . . to dispense drugs in violation [of New Jersey law] constitutes a false certification . . . to get a claim paid or approved by the Government."  Rodriguez and King's Compl. ¶ 21.

Rodriguez and King filed their complaint under seal and served a copy on the United States Government in accordance with the requirements of the False Claims Act.  31 U.S.C. § 3730(b)(2).  In February 2006, the Government declined to intervene in the case and the District Court ordered the complaint unsealed.  *Rodriguez v. Our Lady of Lourdes Med. Ctr.*, No. 06-0129, 2006 WL 3193838, at *1 (D.N.J. Nov. 1, 2006).  In May 2006, the Medical Center made a motion to dismiss the complaint under either Federal Rule of Civil Procedure 12(b)(6) or 9(b), contending that the complaint neither stated a *prima facie* case under the False Claims Act nor complied with the heightened pleading requirements that apply to allegations of fraud.  On November 1, 2006, the District

work with Community Health Practice, which serves as a primary clinic to the uninsured working poor.

[3] The New Jersey Pharmacy Act was repealed and replaced by the New Jersey Pharmacy Practice Act, N.J. Stat. Ann. § 45:14-40 *et seq.*

Court granted the motion to dismiss under Rule 12(b)(6). *Rodriguez*, 2006 WL 3193838, at * 2. Rodriguez and King filed a notice of appeal on December 27, 2006, 56 days later.

## II. Jurisdiction

Before we can reach the merits, we must determine whether Rodriguez and King's appeal was timely.[4] *See Benn v. First Judicial Dist. of Pennsylvania*, 426 F.3d 233, 237 (3d Cir. 2005) ("Compliance with the Rules of Appellate Procedure for proper filing of a notice of appeal is mandatory and jurisdictional.") (internal quotation marks omitted). The timeliness of a notice of appeal is governed by Rule 4(a)(1) of the Federal Rules of Appellate Procedure. This provides in pertinent part:

> (A) In a civil case, except as provided in Rule[] 4(a)(1)(B), . . . the notice of appeal . . . must be filed . . . within 30 days after the judgment or order appealed from is entered.
>
> (B) When the United States . . . is a party, the notice of appeal may be

---

[4] The District Court had jurisdiction under 28 U.S.C. § 1331.

> filed by any party within 60 days
> after the judgment or order
> appealed from is entered.

Fed. R. App. P. 4(a)(1)(A), (B). Because the notice of appeal here was filed 56 days after the District Court's entry of judgment, its timeliness hinges on whether the United States still counts as a "party" to a private False Claims Act action for Rule 4(a)(1) purposes when it initially declines to intervene.

This is an issue of first impression for our Court and one over which courts of appeals have split. The Courts of Appeals for the Fifth, Seventh and Ninth Circuits apply the 60-day deadline under these circumstances. *See United States ex rel. Lu v. Ou*, 368 F.3d 773 (7th Cir. 2004); *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304 (5th Cir. 1999); *United States ex rel. Haycock v. Hughes Aircraft Co.*, 98 F.3d 1100 (9th Cir. 1996). The Courts of Appeals for the Second and Tenth Circuits apply the 30-day deadline. *See United States ex rel. Eisenstein v. City of New York*, 540 F.3d 94 (2d Cir. 2008); *United States ex rel. Petrofsky v. Van Cott, Bagley, Cornwall, McCarthy*, 588 F.2d 1327 (10th Cir. 1978) (*per curiam*).

What makes this issue difficult is the neither fish nor fowl nature of the Government's relationship to a *qui tam* action

7

under the False Claims Act.[5]  The Act empowers a private litigant to bring an action "in the name of the Government." 31 U.S.C. § 3730(b)(1).  The private litigant must initially serve the complaint on the Government under seal.  § 3730(b)(2).  The Government then has 60 days to determine whether to "proceed with the action, in which case the action shall be conducted by [it]," or else decline to do so, "in which case the person bringing the action shall have the right to conduct the action." § 3730(b)(4)(A), (B).

Even when the Government declines to intervene initially, it still retains the right to continue involvement in the case in various ways.  It may require that it "be served with copies of all pleadings filed in the action," and may, upon a showing of "good cause," intervene in the action "at a later date."  § 3730(c)(3).  Indeed, in this case, the Government, in declining to take over the action, requested specifically that it be served with all pleadings and sent all Orders issued by the Court, and noted that it reserved the right to intervene at a later date for good cause.  Moreover, should the private False Claims Act suit succeed, the Government is entitled to at least 70% of the award.  § 3730(d)(2).  Finally, although this Court has not yet ruled on the matter, most courts have held that the Government retains the right to veto any settlement agreement reached by a private False Claims Act plaintiff.  *See United*

---

[5] While not all *qui tam* actions are brought under the False Claims Act, it is by far the most frequently used of those laws that allow for such actions. *See Stevens*, 529 U.S. at 768.

*States ex rel. Ridenour v. Kaiser-Hill Co., LLC*, 397 F.3d 925, 931 n.8 (10th Cir. 2005); *United States ex rel. Doyle v. Health Possibilities, P.S.C.*, 207 F.3d 335, 339 (6th Cir. 2000); *Searcy v. Philips Elecs. N. Am. Corp.*, 117 F.3d 154, 159–160 (5th Cir. 1997). *But see United States ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 722 (9th Cir. 1994) (holding that the Government's right to prevent a private plaintiff from dismissing a False Claims Act suit without its consent only applies during the initial 60-day period during which the Government can elect to take over the action).

The question we face, then, is whether all of this is enough to make the United States a "party" for Rule 4(a)(1) purposes, even when it has initially conceded to a private party "the right to conduct the action." § 3730(b)(4)(B). In answering this question, we do not find it dispositive to dwell on the meaning of the word "party." On the one hand, the United States' "name is on all the papers as the plaintiff," *Haycock*, 98 F.3d at 1102, which certainly makes it look like a party to the action, as does the fact that it stands to receive the bulk of any award obtained, § 3730(d)(2). On the other hand, as the Court of Appeals for the Second Circuit has noted, "[t]he inability to participate without moving to intervene is . . . not consistent with the principal characteristics of being a party to litigation." *Eisenstein*, 540 F.3d at 98; *see also Petrofsky*, 588 F.2d at 1329 (stating that a *qui tam* plaintiff's proceeding in the name of the United States is "merely a statutory formality").

We do, however, join our colleagues in the Fifth, Seventh

9

and Ninth Circuits in finding significant that, even when it declines to intervene, the United States remains a party to a *qui tam* action in the literal sense, *i.e.*, its name is on the caption. *See Ou*, 368 F.3d at 775; *Russell*, 193 F. 3d at 307–08; *Haycock*, 98 F.3d at 1102. Applying the shorter deadline may confuse litigants who, based on a literal reading on Rule 4(a)(1), assume that the longer deadline applies. It is especially important, when interpreting procedural rules, that we avoid any reading likely to cause confusion. *See* Fed. R. Civ. P. 1 (requiring that the Federal Rules of Civil Procedure "be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding"); *Russell*, 193 F.3d at 308 (reading Rule 1 of the Federal Rules of Civil Procedure as "a charge to resist reading the Rules in a manner that lays traps for the unwary"). Thus, considerations of clarity for litigants cut in favor of applying the longer deadline. *See Ou*, 368 F.3d at 775; *Russell*, 193 F. 3d at 307–08; *Haycock*, 98 F.3d at 1102; *Petrofsky*, 588 F.2d at 1329 (Logan, J., dissenting).

In addition, the purpose underlying granting a longer deadline when the United States is a party favors applying the longer deadline under these circumstances. As the *Russell* Court explained, the purpose of the extra time is to accommodate the relative slowness of the "[G]overnment's institutional decisionmaking practices." 193 F.3d at 306 (citing the Advisory Committee's Notes of 1946 to Federal Rule of Civil Procedure 73(a), the predecessor to Federal Rule of Appellate Procedure 4(a)). The *Eisenstein* Court reasoned that this suggests that the

10

30-day deadline is appropriate in this context, since, when the Government is not actually controlling the litigation, its status as a slow-moving institutional actor need not be taken into account. 540 F.3d at 99. This ignores that, even when it initially declines to take over the case, the Government still retains the right to intervene in the action, albeit upon a showing of "good cause." 31 U.S.C. § 3730(c)(3). Accordingly, when a private litigant loses a False Claims Act suit at the district court, the Government retains the right to move to appeal. *See Searcy*, 117 F.3d at 157 (holding that the Government can appeal an adverse decision even without formally intervening under § 3730(c)(3)). That means that the slowness of the Government continues to be relevant to determining how long the right to appeal should remain available.

In sum, we hold that Rule 4(a)(1)(B)'s 60-day deadline for filing a notice of appeal applies to False Claims Act suits even when the Government declines to intervene. Accordingly, Rodriguez and King's notice of appeal was timely, and we have jurisdiction over the appeal under 28 U.S.C. § 1291.

### III. Standard of Review

We review *de novo* a district court's dismissal of an action under Federal Rule of Civil Procedure 12(b)(6). *Phillips v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008). As such, we will uphold the District Court's dismissal only if, accepting "all well pleaded factual allegations as true and draw[ing] all reasonable inferences from such allegations in

11

favor of the complainant," it is clear that Rodriguez and King cannot prove a set of facts that would entitle them to relief. *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003). Because our review is *de novo*, we may affirm the District Court's order on alternate grounds. *See In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 461 (3d Cir. 2000) (explaining the nature of *de novo* review).

## IV. Discussion

The False Claims Act imposes liability on any entity who

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; [or]
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government . . . .

31 U.S.C. § 3729(a)(1), (2). The District Court held that Rodriguez and King "failed to allege that [the Medical Center] violated [the False Claims Act] on the face of the complaint."

12

*Rodriguez*, 2006 WL 3193838, at *2.  The basis for this conclusion was, presumably, that while the complaint alleged that Bergan Lanning received federal funding, it did not describe any actual instances of false claims being submitted.

Rodriguez and King argue that they were not required to assert any specific false claim submissions because their complaint proceeded under a "false certification" theory of False Claims Act liability.  Under that theory, an entity is liable for falsely representing itself as having complied with applicable regulations in connection with the receipt of federal funds.  *See United States ex rel. Quinn v. Omnicare Inc.*, 382 F.3d 432, 441 (3d Cir. 2004).  Under the most expansive version of this theory—the "implied false certification theory" version—liability can attach even when the entity receiving funds has not expressly certified that it complied with the regulations it violated; all that is required is that the entity has received payment from the Government without disclosing that it has violated regulations that affect its eligibility for payment.  *See id.* at 441–42; *United States ex rel. Mikes v. Straus*, 274 F.3d 687, 699 (2d Cir. 2001).  That is Rodriguez and King's theory here—that the Medical Center submitted claims for payment to the federal Government while at the same time violating, without disclosing, applicable rules with respect to the dispensing of prescription drugs.

The District Court declined to address Rodriguez and King's false certification argument, concluding that it was first raised in their Reply to the Medical Center's motion to dismiss,

13

not in their pleadings, and thus could not be considered in addressing a Rule 12(b)(6) motion. *Rodriguez*, 2006 WL 3193838, at *2. That was not a generous reading of Rodriguez and King's complaint. The complaint did assert that "[t]he practice of allowing non-licensed individuals who only ha[ve] a degree in social work to dispense drugs in violation of [New Jersey law] constitutes a false certification, record or statement to get a claim paid or approved by the Government." Rodriguez and King's Compl. ¶ 21. That was plausibly sufficient to invoke the false certification theory.

But even granting that Rodriguez and King's complaint asserted a false certification theory of False Claims Act liability, the District Court's dismissal was nonetheless appropriate. Our Court has yet to adopt in a holding the false certification theory, either in its express or implied version.[6] *Quinn*, 382 F.3d at 441. Yet again we can avoid this issue, for even were we to adopt the implied false certification theory here it would not affect the disposition of this case. That is because Rodriguez and King's complaint failed to assert the elements necessary to succeed under that theory.

---

[6] While *Quinn* included an extensive discussion of the false certification theory of False Claims Act liability, it did not explicitly adopt it. 382 F.3d at 441–43. Rather, it held that, even assuming the applicability of that theory, the plaintiff could not prevail under it because he did not show that the specific drugs dispensed contrary to applicable regulations had been paid for by the Government. *Id.* at 443.

14

What Rodriguez and King argue is that by alleging *both* that Bergan Lanning receives federal funding *and* that, at various times, pharmaceuticals have been dispensed by Bergan Lanning employees who are not licensed to do so under New Jersey law, they adequately pled a False Claims Act violation under an implied false certification theory. But that is incorrect. To state a claim under that theory it is necessary to allege not only a receipt of federal funds and a failure to comply with applicable regulations, but also that payment of the federal funds was in some way conditioned on compliance with those regulations. *See Quinn*, 382 F.3d at 441; *Mikes*, 274 F.3d at 697; *United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*, 214 F.3d 1372, 1376 (D.C. Cir. 2000). Otherwise, the False Claims Act would be turned into "a blunt instrument to enforce compliance with all . . . regulations" rather than "only those regulations that are a precondition to payment." *Mikes*, 274 F.3d at 699.

Rodriguez and King argue that our Court weakened this requirement in *Quinn*. It is true that in *Quinn* we expressed approval, in *dicta*, for the plaintiff's argument that "a finding of [False Claims Act] liability, based on an implied certification theory, should not be limited to situations where the underlying regulation or statute expressly states that compliance is a condition of payment." 382 F.3d at 432. Nonetheless, we still indicated that a plaintiff must show that the alleged violations would be relevant to "the [G]overnment's disbursement decisions." *Id.* at 433 (quoting *Mikes*, 274 F.3d at 697).

15

That is what is missing from Rodriguez and King's complaint—any suggestion that Bergan Lanning's alleged receipt of federal funds was linked to compliance with New Jersey law regulating eligibility to dispense prescription drugs. Without that step, we hold that there can be no False Claims Act liability for the Medical Center, even assuming that prescriptions were filled at Bergan Lanning by persons not eligible to do so. In their brief, Rodriguez and King contend that "it is axiomatic that [the Medical Center] in connection with its grant submission and seeking Medicaid reimbursement must certify . . . , whether it be express or implied, that it is complying with the New Jersey Pharmacy Act and Regulations in connection with the provision of the pharmaceutical services specified under the Act." Rodriguez and King's Br. 5–6. But they were required to spell out that connection in their complaint, rather than relying on the Court to find it. Accordingly, dismissal under Rule 12(b)(6) was warranted.

## V. Conclusion

Rodriguez and King's appeal was timely, as we hold a 60-day appeal period exists in this case. However, as their complaint failed to assert a link between the Medical Center's alleged regulatory violations and its receipt of Government funds, it did not state a violation of the False Claims Act. We therefore affirm the District Court's dismissal of the suit.